MARIE M. OWSLEY and Others v. NELS JOHNSON and Others.[1]

June 9, 1905.

Nos. 14,403—(86).

**Registration of Title—Practice.**

All rules and principles of law applicable to rights in real property, and rules of practice with reference to the trial of actions at law or in equity, in so far as clearly not inappropriate or otherwise provided for, should be followed and applied in proceedings under the Torrens act for land transfer. Where issue is joined in such proceedings, findings of fact and conclusions of law should be made as in ordinary actions.

**Boundaries.**

The boundaries of land conveyed by well-known descriptions, such as lots or blocks in a town plat, and "according to" such plat, are, as a general rule, limited to those designated by the plat.

**Same.**

The rule is subject to exceptions, to specific calls of the conveyance, and the plat will yield to a clearly shown intention of the parties at variance therewith.

**Intent.**

But the intent which is most certain will prevail over the one which is indefinite, or left to conjecture or speculation.

**Conveyance by Plat.**

Minnesota Point, a peninsula of land in Duluth extending into Lake Superior, was located as a town site under the provisions of the act of Congress of May 23, 1844, c. 17, 5 St. 657, by certain persons composing the "town council of Duluth." Such council caused the land so located to be platted into town lots of the uniform size of forty by one hundred feet, designating them by appropriate numbers. A plat thereof was filed in the office of the register of deeds, and the lines of the lots platted were shown and indicated thereon. Lying between the rear ends of certain of the lots so platted and the lake shore was a strip of land varying in width, according to the sinuosities of the lake shore, from ten to one hundred feet, which was not designated nor marked on the plat as a subdivision thereof. The lots abutting upon this tract were prior to 1866 conveyed by the town council to the predecessors of defendants, under and through whom defendants claim the tract in question. Thereafter the town council conveyed the strip of land between the lots and the lake shore to James J. Egan, and plaintiffs claim title through him. It is *held*

[1] Reported in 103 N. W. 903.

that defendants have no title, right, or interest in the strip of land men-
tioned; that the boundaries of the lots owned by them and abutting upon
such strip are limited to those designated on the official plat. Neither
the plat, nor the circumstances surrounding its execution, indicate an
intention on the part of the town council that the side lines of the lots
owned by defendants should be extended to the lake shore.

Appeal by defendants Michael Gallagher and others from a judg-
ment and .decree of the district court for St. Louis. county, Cant, J.,
entered upon the application of plaintiffs in proceedings for the reg-
istration of the title to land under the Torrens system. Affirmed.

*J. B. Richards,* for appellants.

*Washburn, Bailey & Mitchell,* for respondents.

BROWN, J.

Proceedings under the Torrens system of land transfer to register
title to certain land in the city of Duluth. The facts are as follows:
Minnesota Point, a peninsula of land extending into Lake Superior,
was surveyed by the general government into fractional lots, and prop-
erly designated as such on the records in the General Land Office.
Subsequently all the land composing the peninsula and so surveyed
was entered at the proper United States land office as a town site,
under the provisions of the act of Congress of May 23, 1844, c. 17, 5 St.
657, by certain persons composing the "town council of Duluth."
Such proceedings were thereafter had that the land was, in July, 1861,
duly patented to the town council for the use and benefit of the persons
occupying the same. The town council caused the land to be platted
into lots of the uniform size of forty by one hundred feet, designating
them on the recorded plat by appropriate numbers. The lots involved
in this controversy, viz., 201, 203, 207, 209, 213, 221, 225, 231, 235, and
237, front on Lake avenue, a street extending the entire length of the
plat, and were conveyed to defendants' predecessors by the town coun-
cil at different dates prior to the year 1865, and their deeds were duly
recorded. They were conveyed by the numbers designated on and
"according to the recorded plat." The entire body of land so con-
veyed to the town council was not included within the plat. There
remained unplatted between the line of the rear ends of the lots above
mentioned and others similarly located and the lake, lying to the east

thereof, a strip of land varying in width, according to the sinuosities of the lake shore, from ten to one hundred feet.   This tract of land was by the town council, in 1869, several years after the conveyance to defendants' predecessors, conveyed to James J. Egan, the same being· described in the deed to him by metes and bounds.   It is this tract of land that is in controversy in this proceeding.   Plaintiffs claim title through Egan; and defendants contend that they and their predecessors acquired by their deeds title to low-water mark on Lake Superior; that the land between the rear line of their lots and the lake shore passed by the conveyance to their predecessors by the deed from the town council of the abutting lots.   The trial court held that the boundaries of the lots owned by the defendants were limited to those designated on the plat by which they were originally conveyed, and that defendants have no title to the strip in controversy.

Two principal questions are presented on this appeal: (1) Whether the trial court should have made findings of fact, as in other actions; and (2) whether its conclusion that defendants have no title to the strip of land in question is sustained by the undisputed facts.

1. Defendants appeared in this proceeding after its commencement, and by answer asserted and claimed title to the land in controversy as owners of the abutting lots, and upon the issues thus raised the matter proceeded to trial.   At the close of the trial defendants requested the court to make findings of fact and conclusions of law, which request was denied.   The ruling of the court is assigned as error.   In this, we think, the court erred, though, in view of the condition of the record before us, the error is not such as to justify a reversal of the case.   The facts respecting the title to the land are undisputed.   There were no controverted issues to be settled by specific findings.   However, we are of opinion that in proceedings of this kind, though the Torrens act contains no express directions on the subject, where issues are made by the appearance of parties who, by their pleadings, assert rights in the property sought to be registered adverse to the petitioners, findings of fact should be made as in ordinary civil actions.   In fact, all rules and principles of law applicable to equitable actions and proceedings, and rules of practice with respect to the trial, introduction of evidence, findings and order of judgment, should, so far as not clearly inappropriate or otherwise provided for by the act, be followed and applied.

But, as stated, the failure to make findings in this particular case was not reversible error.

2. It is contended by defendants that a proper construction of the plat made by the town council conclusively demonstrates an intention on their part to leave the tract of land in controversy as an appurtenance to the adjacent lots, and as part and parcel thereof, leaving nothing to be conveyed to Egan. A number of reasons are urged in support of this contention, which require reference only in a general way.

The boundaries of land granted or conveyed by well-known descriptions, such as lots or blocks in a town plat, or government subdivisions of public land, and "according to" such plat or survey, are, as a general rule, limited to those designated by the plat or survey. In such cases the plat or field notes of the survey are to be regarded as incorporated into the instrument of conveyance and as furnishing the true description of the land. 5 Cyc. 884–891. Of course, where a controversy arises as to the true boundaries, the intention of the parties is an important element in determining the extent of the grant, as evidenced by the entire transaction, but that intent which is most certain and definite will prevail over that which is indefinite, or left to conjecture or speculation. There are certain exceptions to this rule, the most common of which applies to conveyances of land abutting upon a street or public highway, where the grantee takes title to the center or middle of the street. Rich v. City of Minneapolis, 37 Minn. 423, 35 N. W. 2; Lamm v. Chicago, St. P., M. & O. Ry. Co., 45 Minn. 71, 47 N. W. 455. And where a person plats land owned by him, and lays a street on the margin thereof, wholly upon the land platted, and next to and adjoining land owned by a stranger, the grantee of a lot abutting upon such street takes title to the entire street fronting his lot. In re Robbins, 34 Minn. 99, 24 N. W. 356. The rule followed in the case just cited would not apply if the owner of the ground platted owned property on the opposite side of the street. In such case the purchaser would acquire title to the center of the street only.

The general rule stated is recognized by counsel for defendants, but he insists that it has no application to the case at bar, because, as he urges, the town council in platting the town site intended the land in controversy to be and remain a part of the lots; that this intention is manifest, and brings the case within the exception to the rule. We are

unable to concur in this contention. As already stated, the plat covered and included the entire body of land conveyed to the town council by the government, except the portion here in controversy, and perhaps tracts similarly located at other points. The main body of Lake Superior lies to the east of the lots owned by defendants, the line of the lake shore, low-water mark, being indicated on the plat, and at places extends nearly to the center of some of the lots as platted. The bank of the lake is also designated, and extends in a general way through the center of the lots owned by defendants, though the plat discloses that such lots did not, according to the lines shown thereon, reach the lake shore at any point.

There were no occupants of the tract in question at the time the lots were conveyed to defendants, nor did Egan, to whom the town council conveyed, occupy it at any time. Neither the plat, nor the circumstances surrounding its execution, nor the character of the strip of land in controversy, in our view of the matter, disclose an intention on the part of the town council that it should remain as an appurtenance to or pass with the conveyance of the lots themselves. At least, whatever inferences may be indulged in this connection are less certain than the definite and explicit boundaries as delineated on the plat, and consequently insufficient, within the rule, to require the latter to yield. If the council had intended to make them riparian lots, if the purpose was to make them available or valuable in connection with the lake, the simplest and most effective way of indicating it would have been to extend the lines so as to intersect with the lake, which was not done. Wait v. May, 48 Minn. 453, 51 N. W. 471, is cited in support of defendants' contention. That case, properly understood and construed, is not in point. It there appeared that Judge Sherburne, who located certain land at Excelsior as a town site under an act of Congress, platted the same, designated on the plat a strip of land between the lots and the lake shore as a street, the street being bounded on the one side by the lake and on the other by the lots. In a controversy between the owner of one of the lots fronting the street, holding through Judge Sherburne, and the railway company, the court held, following the rule laid down in In re Robbins, supra, that the purchaser of lots so platted acquired title to the entire street, instead of to the center, as under the general rule, and owned the fee title to the lake

shore. The manifest intention in making the plat there involved was to leave no land between the street and the lake shore; and as the platter owned no land on the opposite side the plaintiff was the owner of the entire street facing his lot.

In the case at bar there was no street laid between the rear ends of the lots owned by defendants and the lake shore, and the rule laid down in the May case can have no application. And again, in the May case, Judge Sherburne, the trustee, who located and platted the land as a town site, conveyed no land between the street and the lake shore; thus showing conclusively that there was no intention to reserve the title to any land thus located. In the case at bar, the trustee, the town council, within three or four years after the execution of the deeds to defendants' predecessors, conveyed the land in question to Egan. What would have been the result had there been no conveyance of this tract to Egan we need not determine. It is sufficient to say that the fact tends to rebut any inference of an intent that might otherwise arise that this strip of land should be an appurtenance to the lots, affording the owner riparian rights and access to the lake.

It is urged by defendants that the effect of the decree of the trial court awarding title to the land to plaintiffs will, if not reversed, defeat the future right of the public to landing places and access to the lake shore at the end of certain streets, as shown in the plat. We do not concur in this contention. The plat, so far as the streets there shown are concerned, must necessarily control as to their extent. The court could not presume an intention to dedicate for public uses any part of the land in question not shown to have been dedicated by the town council when the plat was made. Moreover, section 30, subd. 4, of the Torrens Act (Laws 1901, p. 357, c. 237), expressly provides that a public highway embraced in the description of lands involved in any proceedings thereunder shall be deemed to be excluded from any certificate of title issued. So that, if there are any highways extending over the tract to the lake shore, they are protected by the provisions of the act.

It is also urged that the town council had no authority to convey the land to Egan, and that in doing so the council violated the trust reposed in it, and no title passed from them by the attempted convey-ance. Defendants are in no position to insist upon this point, conceding

that it is not wholly without merit. The rule is that each party in actions involving title and rights in real property must recover upon the strength of his own, and not upon the weakness of his adversary's, title. This rule applies to proceedings under the Torrens act, and is conclusive against defendants' contention. The deed to Egan conveyed at least a prima facie title—in fact, the legal title—to which plaintiffs have succeeded. Until vacated and set aside in some appropriate proceeding, it vests in them, as a matter of law, rights superior to any shown in defendants, and sufficient to support a decree. Defendants, for reasons already stated, are strangers to the title, and the presumption is that the town council complied with the law. Taylor v. Winona & St. P. R. Co., 45 Minn. 66, 47 N. W. 453; Lamm v. Chicago, St. P., M. & O. Ry. Co., 45 Minn. 71, 47 N. W. 455.

The mere fact that the land escaped taxation for a number of years after the plat was filed is not of controlling importance. It was not the duty of the town council, after having conveyed it, to cause it to be entered on the tax rolls for taxation; and no inferences are to be drawn adversely to plaintiff by their failure to list it. Very few people exert themselves in that direction, but are quite willing to rest upon the failure of the taxing officers to discover lands owned by them which are not on the tax assessment lists.

Order affirmed.