EMMA E. GRIDLEY and Another v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

June 24, 1910.

Nos. 16,640—(102).

**Riparian rights — description in deed.**

The owner of an unplatted tract of land bordering on the river St. Louis, on March 30, 1874, executed a deed of a portion of the tract to the appellant's remote grantor, in which the land conveyed was described as follows:

[1] Reported in 126 N. W. 897.

"So much of the north half of lots two and three, in section twenty-six, township forty-nine, of range fifteen, in said county [St. Louis], as lies within one hundred feet from the center line of the railroad of said corporation as the same is constructed through said lots two and three on the east side of said center line and within fifty feet of said center line on the west side thereof." The westerly or land side boundary of the land so described was wholly over dry land, and the easterly or river side boundary line was over dry land for approximately one-half of its length; but the rest of it extended across the shallow waters of the river. *Held*, that the grantee acquired by the deed no title or rights of any kind to or in the part of the tract lying easterly of the easterly boundary line of the part of the tract described in the deed.

Application to the district court for St. Louis county to have the title to certain land registered. The Northern Pacific Railway Company alone answered, and in its answer denied that plaintiff was the owner of the land covered by the application for registration and alleged that it was "the owner in fee of so much of lot two in section twenty six in township forty nine north, of range fifteen west, in St. Louis county, Minnesota, as lies easterly of a line drawn parallel with and fifty feet westerly from the center line of the main track of this defendant's railroad as the same is now located  *  *  *  including all of the riparian rights appurtenant to the shore, that is to say, to the established government dock line in the bay of St. Louis opposite said property." The facts were stipulated. The proceeding was heard before Cant, J., who decreed that Emma E. Gridley and James T. Hale were owners as tenants in common in the proportions of five-sixths and one-sixth respectively of the land in controversy and that the title of Emma E. Gridley and James T. Hale be confirmed and registered. From the order so entered, defendant Northern Pacific Railway Company appealed. Affirmed.

*Emerson Hadley* and *Oscar Mitchell*, for appellant.

*John G. Williams* and *Marion Douglas*, for respondents.

START, C. J.

This is an appeal by the Northern Pacific Railway Company from a judgment of registration of title, in favor of the applicants, respondents herein, made by the district court of the county of St.

Louis in proceedings for the registration of title to land. There is little, if any, dispute as to the evidentiary facts, which are, so far as here material, as follows:

On March 30, 1874, John L. Lenroot was the owner of an unplatted tract of land bordering on the St. Louis river, which is navigable. The tract was located in what is now known as Minnewakan addition to Duluth. The Lake Superior & Mississippi Railroad Company prior to the date named had duly surveyed and located its railroad on and along such tract, and it had instituted condemnation proceedings in the district court of the county of St. Louis to secure a right of way over such tract two hundred feet in width. The commissioners in the condemnation proceedings awarded the owner of the tract $150 damages for the part thereof taken for the right of way. An appeal was taken from the award by the landowner. Thereafter the matter was compromised, and the condemnation proceedings abandoned, and the owner of the tract, John L. Lenroot, on March 30, 1874, in consideration of $125, executed to the railroad company his deed of that portion of the tract which was described therein. The here material part of the deed was in these words:

"I, John L. Lenroot, * * * do by these presents grant, bargain, sell, convey and confirm to said the Lake Superior & Mississippi Railroad Company, its successors and assigns, forever, the following premises, 'strip and parcel of land, being so much of the north half of lots two (2) and three (3), in section twenty-six (26), township forty-nine (49), of range fifteen (15), in said county, as lies within one hundred (100) feet from the center line of the railroad of said corporation as the same is constructed through said lots two and three on the east side of said center line and within fifty (50) feet of said center line on the west side thereof (being a strip one hundred [100] feet in width), including the main and side tracks constructed thereon. * * *"

The westerly or land side boundary line of the land described in this deed was wholly on and over dry land, and the easterly or river side boundary line thereof was on and over dry land for approximately one-half of its length, but the rest of it extended across the shallow waters of the river. The appellant has succeeded to all of

the rights of the railroad company in and to the land described in the deed of Lenroot to it.

It is not controverted that the applicants and respondents have succeeded to whatever title and rights in and to the land here in question which remained in Lenroot after he executed the deed to appellant's remote grantor. The trial court found that the applicants and respondents were the owners of such title and interest, namely: "All that part of government lot two (2) in section twenty-six (26), township forty-nine (49) north, of range fifteen (15) west, St. Louis county, Minnesota, that lies easterly of a line drawn parallel with and one hundred (100) feet easterly of the center line of the main track of the Lake Superior & Mississippi Railroad Company, as it was constructed across said lot two (2) on March 30, 1874, which center line is the center line of main track of the Northern Pacific Railway Company, as now constructed over said lot, and that lies between the northerly and southerly lines of Minnewakan addition to Duluth, according to the United States government survey thereof."

The sole question for our decision is whether this finding is sustained by the evidence. The answer to this question depends upon whether the deed of Lenroot to the railroad company carried with it the riparian right or estate appurtenant to the land adjacent to that part of the easterly or river side boundary line of the granted premises which extended over the waters of the river. This calls for a construction of the deed for the purpose of ascertaining the intention of the parties to it, which is to be ascertained by reading the deed in the light of the admitted circumstances under which it was made.

It will be helpful, before considering the language of the deed, to refer to the decisions of this court relevant to the rights of riparian owners along the river and bay of St. Louis. It appears from such decisions that in 1874, when the deed in question was made, the question of the severability and ownership of riparian rights apart from the ownership of the shore line had not been passed upon by this court; but attempts had been made so to sever and grant riparian rights by platting the submerged lands of the bay and delineating upon the plat thereof lots, blocks, and streets.

It was held in 1888, in the case of Lake Superior Land Co. v. Emerson, 38 Minn. 406, 38 N. W. 200, 8 Am. St. 679, that riparian rights could not be severed and transferred apart from the shore, so as to be rights in gross. This case was, however, overruled the next year by the case of Hanford v. St. Paul & D. Ry. Co., 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L. R. A. 722, in which it was held that riparian rights could be severed and transferred apart from the shore. Another question in the case cited was whether the railroad company acquired the riparian rights appurtenant to one of the tracts of land which it obtained for railway purposes by condemnation proceedings. The tract was described in the petition by metes and bounds on the landward side only. *No line along the shore or water side was given,* but the last of the lines given was described as extending into the bay of St. Louis. The description concluded with the words: "Including all the premises between the lines so described and the said bay of St. Louis." It was held that the riparian rights were acquired by the condemnation proceedings. There could have been no other reasonable conclusion, for the bay was expressly made one of the boundaries of the tract acquired.

The Hanford case was followed in Bradshaw v. Duluth Imperial Mill Co., 52 Minn. 59, 53 N. W. 1066, and it was also held that the platting of Rice's point on the bay in 1858 into blocks, some of which were out in the water, beyond and in front of the shore block, distinctly indicated an intention on the part of the riparian owner to separate the shore blocks from the submerged blocks. In reaching this conclusion it is evident that the court did not regard as significant the fact that the platting was made, as was the deed here in question, before this court had decided that riparian rights could be severed and transferred apart from the shore.

The case of Northern Pacific R. Co. v. Scott & Holston Lumber Co., 73 Minn. 25, 75 N. W. 737, involved the subject of the severance and transfer of riparian rights apart from the shore line, and the Hanford case in this respect was followed. The case also involved the question of the effect of the platting and transfer of certain submerged land upon the riparian rights of the owner of a shore block. Counsel for the appellant herein seems to rely upon the case

cited as decisive in its favor of the case at bar. An examination of the facts of the case cited indicates that the decision of that case has but little, if any, relevancy to the one here under consideration. In that case the owner of lands bordering on the bay of St. Louis platted them, with a portion of the submerged lands in front of them. He made and recorded a plat thereof, on which was indicated a public alley thirty feet wide in front of one of the shore blocks. Next in front of this alley lines were drawn on the plat embracing a tract of submerged land, two hundred feet in width, which was the outermost lot or tract platted, and its exterior line was the outermost line on the plat. The tract was thereafter conveyed by the platter by reference to the plat. It was held that the riparian rights originally incident to the shore block were severed therefrom by the plat and attached to the outermost lot or tract. The question in the case cited was whether the riparian rights had been severed from the shore line or block, and it was held upon the facts stated that they had been. In the case at bar the contention of appellant is, in effect, that there was no severance of such rights from the shore line by the deed in question. It is quite obvious that if the case cited, in view of its facts, is here at all relevant, it does not support the contention of the appellant.

Now, if the deed in question be read and construed with reference to the circumstances under which it was made and the decisions of this court to which we have referred, there can be no fair doubt as to the intention of the parties. If they had, as was done in the Hanford case, made the river the easterly boundary line of the strip of land conveyed, it would be clear that it was their intention to convey all the riparian rights appurtenant to the shore line. They did not so describe the granted premises; but, on the contrary, the deed conveys a strip of land, describing it by metes and bounds, and designates two parallel boundary lines, one on the land side and the other on the water side of the center line of the railroad of the grantee, as the same was then located on the ground. Again, where the boundary line of the strip on the water side strikes the water, it does not stop at the water's edge; but it is extended across the water until it again strikes the shore, thus inclosing the land conveyed within the two designated parallel boundary lines, which are fixed

independently of the shore line. This clearly negatives any intention to bound any part of the granted premises by the river, or to project the shore line into the water; but it does show that it was the intention of the parties to limit the grant for all purposes to the strip of land included within the boundary lines, and to exclude therefrom all riparian rights. We so construe the deed.

It follows that the trial court correctly construed the deed, that its findings of fact are sustained by the evidence, and that the judgment appealed from must be affirmed. So ordered.