# CASES

## ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF MINNESOTA.

## ROBERT STAVANAU v. WILLIAM GRAY.[1]

### June 6, 1919.

### No. 21,170.

**Deed — description by metes and bounds — riparian rights on meandered lake.**

1. A deed to land, located in a government lot bordering upon a meandered lake, described by metes and bounds, without any reference to the lake, in the absence of a showing to the contrary, conveys only the land embraced within the lines of the description and does not carry with it any riparian rights.

**Same — intent of parties — parol evidence inadmissible.**

2. In arriving at the intention of the parties to a deed of land in a government lot bordering upon a meandered lake, the conveyance must be read and considered in the light of existing conditions, and parol evidence of the intention of the parties is inadmissible.

Action in the district court for Le Sueur county to restrain defendant from entering certain land under claim of ownership and from interfering with plaintiff or his servants in removing fences or obstructions placed thereon by defendant. The answer alleged ownership by defendant of the land in dispute, with all riparian rights, for more than 15 years by exclusive, hostile and adverse possession under claim of title. The case was tried before Tifft, J., who made findings and ordered judg-

[1]Reported in 172 N. W. 885.
143—M. 1

ment dismissing the action. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Moonan & Moonan,* for appellant.

*Thomas Hughes* and *S. B. Wilson,* for respondent.

QUINN, J.

Action to enjoin defendant from trespassing upon the tract of land in controversy. The trial court made findings and ordered judgment in favor of the defendant. From an order denying his motion for a new trial plaintiff appeals.

Round lake is a small meandered body of water located within sections 29 and 30. It extends west to within about 36 rods of the center of section 30. Government lot 2 of section 30 abuts upon the north shore of the lake and embodies that portion of the southeast quarter of the northeast quarter of the section lying outside of the meander line; lot 3 abuts upon the west and south shore and embodies that portion of the northwest quarter of the southeast quarter of section 30 lying outside of the meander line, and lot 4 abuts upon the south shore and embodies that portion of the southeast quarter of the southeast quarter of section 30 lying outside of the meander line.

On October 30, 1905, Joseph Warner was the owner of the south 33 acres of lot 2 and all of lots 3 and 4 of section 30. On that day he sold and conveyed to the plaintiff lot 4 and all of lot 3, except seven acres on the west side described by metes and bounds in the deed. Subsequently Warner sold and on August 2, 1911, conveyed the south 33 acres of lot 2 and the seven acres which he had retained in lot 3, to defendant by the following description: The south 33 acres of lot 2; also commencing at the center of section 30, thence east 36 rods (A); thence south 9½ degrees west 12 rods (B); thence west 15 rods; thence south 35 degrees west 13 rods; thence south 52 rods (C); thence west 10 rods 18 links; thence north 75 rods to the place of beginning, containing seven acres, all lying in section 30, the identical description by which the same was exempted from the above conveyance of lot 3 to plaintiff. The line AB, as above indicated, is along the west bank of the lake, partly upon ground several feet higher than the water. The section corner stakes are lost and the meander line is in dispute. The water in the

lake has receded so that at the time of the trial it was 40 feet distant from the line AB. The strip of land in controversy lies immediately to the east of the above line and is about 35 feet wide and 12 rods long. Prior to Warner's ownership of lot 3, a fence had been built from point C along the east side of the seven acres to point B, and thence east to the water in the lake, and also one parallel therewith and extending to the line AB, forming a lane 20 feet wide for the owner's cattle to pass from his premises west of lot 3 to a pasture on the east portion of lot 2.

It is the contention of the plaintiff that he acquired, under his deed from Warner, all riparian rights pertaining to lot 3, and that defendant acquired, under his deed from Warner, only the seven acres within the lines constituting the description thereof by metes and bounds. Upon the other hand, it is the contention of the defendant that the eastern line of the seven acres extending from A to B is upon and along the shore of the lake, which entitles him to the accretion by the recession of the water in the lake, even though the description in his deed is by metes and bounds.

It is undisputed that Warner, the common grantor of the parties to this action, was, on the thirtieth of October, 1905, the owner in fee of all of lot 3, and that whatever interest either of the parties to this action acquired therein was derived through their respective deeds from him. It is well settled in this state that the owner of a government lot abutting upon a meandered body of water may sever the riparian rights and convey the same separate from the shore. Hanford v. St. Paul & D. R. Co. 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L.R.A. 722; Bradshaw v. Duluth Imperial Mill Co. 52 Minn. 59, 53 N. W. 1066; Gridley v. Northern Pacific Ry. Co. 111 Minn. 281, 126 N. W. 897.

The trial court found that the defendant, under his deed from Warner, acquired the riparian rights or accretion appurtenant to the seven-acre tract, which includes the ground in controversy. The sole question here for consideration is, whether the finding is sustained by the evidence. The answer to this question depends upon whether the deed from Warner to the defendant carried with it the riparian rights appurtenant to the land bordering on the line AB.

This calls for a construction of the deeds by which Warner conveyed lot 3, for the purpose of ascertaining the intentions of the parties thereto

and determining what interest therein was conveyed by each instrument, which must be done by reading them in the light of the facts and circumstances existing at the time the same were made. Warner obtained title to lot 3 from two sources and by the same descriptions by which he conveyed the same. He never occupied or used the premises for any purpose. He deeded government lot 4 "and all of lot three (3) government survey in said section thirty (30) except seven (7) acres on west side of said lot three (3) by metes and bounds as follows. * * *." The description of the tract of land exempted from this conveyance could hardly be made more specific. It exempts seven acres of ground and then describes the same in detail by metes and bounds. The mere fact, if it be a fact, that 36 rods east from the center of the section is the meander line would not be sufficient to overcome the definite description of the exemption. If the grantor wished to retain the riparian rights appurtenant to the seven acres, he could easily have made reference to the shore of the lake for the purpose of indicating such intention.

The existence of the fence referred to is not, of itself, such as to qualify or overcome the terms of the deed to plaintiff with reference to the intent of the parties as to the property conveyed. The same reasoning applies to the deed from Warner to the defendant. Following the description by metes and bounds in the deed to defendant appears the statement "containing seven (7) acres." There can be no serious question about the amount of land intended to be conveyed by this deed. In this connection it will be noted that the north line of the seven acres constitutes the south line of the 33 acres in lot 2, conveyed to defendant by the same instrument.

The case comes within the rule applied in Owsley v. Johnson, 95 Minn. 168, 103 N. W. 903, and Gridley v. Northern Pacific Ry. Co. 111 Minn. 281, 126 N. W. 897. As held in the latter case, if the deeds in question be construed and considered in the light of the existing circumstances under which they were made, the conclusion follows that the parties intended to convey in accordance with the descriptions contained therein. As to the general rule in determining what is included in a description by metes and bounds, see 9 Corpus Juris, 224, paragraph 155, and cases cited.

Had reference to the shore line of the lake been made in either con-

veyance as forming a boundary to the seven acres, quite a different case might be presented. The entire lot being held by a common grantor and the descriptions in both instruments being definite and clear as to the amount of land conveyed and as to the boundaries thereof, the same is not overcome by the existence of the fence upon the boundary line, or by the fact that the easterly line is in close proximity to the meander line. Parol evidence was not admissible to contradict the terms of the deed or to show a different intention on behalf of the parties thereto. It follows that the finding of the trial court is not supported by competent evidence and a new trial must be granted.

Reversed.

HALLAM, J. (dissenting).

I dissent. The court found that the boundary line of course number 2, referred to in the opinion as the line AB, forms and constitutes a part of the boundary line of a meandered lake known as Round lake and at the time the tract was first set apart coincided substantially with the low water line of said lake.

I think the better rule applicable to such cases is that stated in the following cases:

In County of St. Clair v. Lovingston, 23 Wall. 46, 64, 23 L. ed. 59, the court said: "It may be considered a canon in American jurisprudence that where the calls in a conveyance of land are for two corners at, in, or on a stream or its bank, and there is an intermediate line extending from one such corner to the other, the stream is the boundary."

Applying this rule it was said in McDonald v. Whitehurst, 47 Fed. 757, 758: "This language is used by the supreme court generally of lands lying on streams, without reference to the question whether the deeds conveying them expressly call for the stream or not. If, as in the case at bar, it appears from the evidence that the land does in fact lie on a stream, the canon of law applies, whether the deed expressly declares that fact or not."

I think it should be held that the lake is the boundary of the seven acre tract. The surrounding circumstances and practical construction of the parties seem to me to confirm this construction.