SOPHIA RAHM AND OTHERS v. FRED WEISS, SR. AND
OTHERS.[1]

January 19, 1934.

No. 29,709.

*Henry N. Jenson* and *Christian G. Dosland,* for appellants.
*Peter F. Schroeder,* for respondents.

LORING, Justice.

This was an ejectment suit brought by the present owners of
lot 30 of the county auditor's plat in the city of Detroit Lakes.
The suit was brought to recover possession of a strip of land which
lies between the lake shore and the present trunk highway No. 30
and which strip of land lies directly south of lot 30 as platted, the

[1]Reported in 252 N. W. 432.

trunk highway alone lying between the southern boundary of lot 30 and the strip in question. The suit was brought and tried upon the theory that lot 30 in fact extends to the lake shore and includes the disputed property. The entire property including lot 30 as platted and the disputed property was originally part of government lot 5 of section 34-139-41. It was a strip of land 100 feet in width, lying on the west side of Washington avenue and extending 200 feet from the lake shore along that avenue. By various mesne conveyances this tract, described by metes and bounds, came to James K. O. Sherwood. While the title stood in his name, the county auditor of Becker county, for his greater convenience in describing the land for taxation, apparently caused it to be surveyed and platted as lot 30 under the provisions of G. S. 1878, c. 11, § 108 (L. 1878, c. 1, § 108). This plat described the north 150 feet of the strip heretofore referred to by metes and bounds and designated it as lot 30. Thereafter Sherwood conveyed to the Minnesota Company, Ltd. lot 30 of the auditor's plat, describing it as such. The Minnesota Company, Ltd. did not pay the taxes on lot 30, and it was sold in tax proceedings. The tax deed ran to John A. Teague, who purchased it for $11.74. The plaintiffs claim title to lot 30 through various mesne conveyances from Teague, their title depending exclusively upon the tax title which was obtained through a judgment entered March 21, 1893. With the exception of a skating rink, lot 30 was vacant until about 1926 or 1927, when a filling station was erected upon it. It was about that time that the assessor began to assess the property for improvements. The strip of land here in dispute was not taxed for some years and until one of the plaintiffs became mayor of the city and had it put upon the assessment rolls. Apparently the taxes have been paid by the defendants or their predecessor in interest since that time.

For some years prior to 1912 John K. West was interested in the operation of steamboats upon Detroit Lake and neighboring waters. He had some sort of dock or depot erected upon the disputed tract. He had no title. He was president of one of the companies which was interested in the fee title to lot 30. This may

account for his possession of the disputed strip. According to the evidence, in April, 1912, he sold the structure on this disputed land to Fred Weiss, Sr., who is now deceased. Weiss moved a little store onto the land and conducted a confectionery business. He also took charge of selling tickets and handling freight for West's line of steamboats. A bathhouse was constructed on the premises, and the trial court found that no person other than those who entered with the consent of Weiss has since been in occupation of the disputed land.

In 1885 E. G. Holmes was the owner of land to the north and to the west of lot 30 and the land now in dispute. He platted it as Holmes' second addition to the city of Detroit, now Detroit Lakes. Although he did not own the land which was described as lot 30 or the property to the south thereof, he nevertheless caused a street to be marked on his plat as lying along the south line of lot 30 as platted by the auditor. He had no authority from the owners of the land to so lay out a street, but it appears that the public has probably acquired by prescription the right to a public highway on a part, at least, of the street as so laid out by Holmes. It now comprises a part of trunk highway No. 30. For a considerable period of years prior to the commencement of this action, plaintiffs endeavored to negotiate with the defendants in an effort to place defendants in the position of tenants of the disputed property under a lease with the plaintiffs or to sell them lot 30 or the disputed tract. These negotiations never ripened into a complete transaction of any kind, and in the fall of 1927 this suit was brought.

The complaint alleged ownership in the entire tract of land from the lake shore to the north line of lot 30 and charged that the defendants were in possession of a part of the tract. Upon the trial, when the condition of the record title became apparent, the plaintiffs moved to amend their complaint

"to conform to the proof, to the effect that auditor's lot No. 30, so-called, comprises all of that part of auditor's lot 30 which is 100 feet in width east and west by 200 feet north and south to the lake shore high-water mark, and it was the intention of the auditor's

lot to include the full distance of 200 feet north and south and that the plat as shown is erroneous in this, that it would have been practicable in making that plat to have shown in the register of deeds office that the auditor's lot ran clear to the lake shore, a distance of 200 feet north and south by 100 feet east and west."

Over objection this amendment was allowed, and from that time on the court treated the action as a court case and submitted to the jury only the question of whether or not the defendants had acquired title to the disputed tract by adverse possession, a defense which they had set up in their answer. The jury found against the defendants upon this issue, the court adopted the verdict and made findings in favor of the plaintiffs that auditor's lot 30 comprised the entire tract as conveyed to Sherwood, and that the plaintiffs were the owners thereof, subject only to the public highway, and were entitled to the immediate possession thereof. The defendants moved for amended findings and also for a new trial and have appealed from the order denying their motion.

We shall first discuss the question of the plaintiffs' title, because if that is found insufficient to support the court's findings it disposes of the case and there should be judgment for the defendants on this record. This being an action for ejectment, plaintiffs must prevail on the strength of their own title. Baxter v. Newell, 88 Minn. 110, 92 N. W. 525; Owsley v. Johnson, 95 Minn. 168, 174, 103 N. W. 903. Their title depends entirely upon the description contained in the tax title acquired by Teague. The tax deed and all proceedings leading up to it described the property according to the auditor's plat whereon lot 30 was definitely described as comprising only the northerly 150 feet of the tract which had been deeded to Sherwood. There was no evidence introduced in this case which indicates any mistake in the matter of platting. The tenor of the request from the auditor to the county surveyor is not before us, and the only support that there is for the court's finding that lot 30 included the property clear to the lake is in the ·conjecture that the auditor probably intended to have the surveyor include that property in lot 30. There is no tangible support for this inference.

Usually equity will not interfere to reform the description in a tax deed. A tax title is a purely technical title, acquired *in invitum* as respects the owner of the property. Keepfer v. Force, 86 Ind. 81; Morgan v. Smith, 70 Tex. 637, 8 S. W. 528; Batelle v. Knight, 23 S. D. 161, 120 N. W. 1102, 20 Ann. Cas. 456. But regardless of that rule, this case lacks support for a reformation of the plat even if the plaintiffs' title depended upon a deed from the record owner. Without such reformation the plaintiffs' title depends upon their deeds which by reference incorporated the description as platted. This is controlling here. Owsley v. Johnson, 95 Minn. 168, 171, 103 N. W. 903. We therefore hold that the plaintiffs wholly failed to make out a case and that the defendants should have had judgment in their favor notwithstanding they may not have established a title by adverse possession. The evidence in support of their adverse possession was strong. Their actual possession was conceded, and there was little reason, if any, for the jury to infer that it was not hostile in the sense that it was their purpose to claim title as against all others. It is claimed by the plaintiffs that Weiss's original occupation was permissive because he came upon the premises with West's permission. However, West had no title, and it does not appear that he acted for anyone who had title. He could give no one permission to occupy the premises the title to which was then and still is in Sherwood, unless the defendants have established adverse possession thereof.

The order of the trial court is reversed and the case remanded with direction to make findings and conclusions and to enter judgment in accordance with the views herein expressed.