## Ratliff v. Soward's Guardian, et al.

(Decided February 7, 1913.)

### Appeal from Pike Circuit Court.

1. Deeds—Construction of.—Where a deed describes the land conveyed by the grantors therein as: "All their part and interest in a certain tract of land in Pike County lying just below the mouth of Shelby Creek; it being the farm owned by Jackson Ford at the time of his death. This conveyance is to convey all our interest in said farm as heirs at law of Jackson Ford, deceased," the instrument must be understood as conveying all the interest of the grantors in the farm owned by Jackson Ford at the time of his death, although the farm consisted of two adjoining patents of fifty acres each; one lying a few hundred yards and the other a quarter of a mile from the mouth of the creek.

2. Deeds—Description of Land.—The words, "lying just below the mouth of Shelby Creek," constituting in part the description of the land contained in the deed, do not limit the conveyance to the fifty-acre tract of the Jackson Ford farm lying nearest to the mouth of Shelby Creek, but also includes the remoter fifty-acre adjoining tract, which, with the one nearer the mouth of Shelby Creek, composed the one and only "farm owned by Jackson Ford at the time of his death."

3. Deeds—Locating Surveys—Identity of—Rule.—Lands are frequently described, particularly in the older patents and deeds of this State, as lying or situated upon water courses, or north, south, east or west thereof, which are only in the vicinity of such water courses and, in many instances, several miles therefrom. So, it is sufficient in locating surveys so described, to identify them as situated in proximity to or in the neighborhood of the stream named. The rule is, of coures, otherwise, where the survey is described as beginning on, calling for or running with the stream, as in that case the location of the survey must be determined by that of the stream.

4. Deeds—Claimant of Land Under Unrecorded Deed.—A claimant of land cannot acquire title under a recorded deed as against others asserting title thereto under an older unrecorded deed, where such claimant at the time of obtaining his deed had notice of the existence of the prior unrecorded deed, or the grantees in the unrecorded deed were then in the actual possession of and claiming

to own the land; their right thereto in the latter event being protected by the statute of champerty.

5. Land—Action Involving Title.—In this action involving the title to a part of the Jackson Ford farm appellees were properly adjudged to be the owners of the land, (1) because of the superiority of their title over that of appellant; (2) because of their actual adverse possession of the land for more than fifteen years, prior to the execution of the deeds under which appellant claims title, and also prior to the institution of the action.

YORK & JOHNSON and ROSCOE VANOVER, for appellant.

J. S. CLINE, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming on the original and reversing on the cross-appeal.

The appellees, infant children and only heirs at law of Morgan Sowards, Jr., deceased, by their statutory guardian, brought this action in the Pike Circuit Court against the appellant to recover damages for the cutting of timber and other trespasses done and committed by him upon a tract of land, known as the May fifty acre patent or survey, of which appellees claim to be the owners and in possession.

The prayer of the petition, in addition to the personal judgment sought against appellant for the damages sustained by appellees on account of the cutting of the timber by him, asked that their title to and possession of the land be quieted.

In the answer and counterclaim filed by appellant he traversed the averments of the petition and alleged title in himself to all the land described in the petition. The affirmative matter of the answer and counterclaim was controverted of record. Thereafter, appellant filed an amended answer and counterclaim, in which it was admitted, that the averment in the original answer and counterclaim that he owned all the May survey, was a mistake, and alleged, in substance, that he only owned that part lying between Shelby Creek and a ridge extending from a point near the creek diagonally through the May survey. Appellees by reply denied the averments of the amended answer and counterclaim, and, later filed an amended petition of two paragraphs; the first containing a plea of the statute of limitations based upon an alleged costinuous, actual and adverse possession, by appellees, their father and his vendors, of the entire May servey to a well defined marked boundary, for more than fifteen years before the institution of the action, and also

for more than fifteen years before appellant went upon or set up claim to same. The second paragraph pleaded the statute of champerty, alleging that appellees were in the actual, adverse possession of the entire May survey, when appellant claimed to have purchased it or a part thereof, and also when he went on the land and committed the acts of trespass complained of.

Following the filing of the amended petition and the taking of numerous depositions by the parties, the case was submitted for trial and judgment; but thereafter, and more than a year after the entering of the order of submission, it was, on appellant's motion and over appellees' objection, set aside, and appellant permitted to file a second amended answer and counterclaim, wherein was repeated the allegation that he owned all that part of the May survey between Shelby Creek and the ridge, and also alleged that he owned an undivided third of that part of the May survey lying on the opposite side of the ridge.

This amended answer and counterclaim, like the original answer and counterclaim, was, as shown by an order of the court, controverted of record, but we have failed to find in the record any pleading or order controverting the affirmative matter of appellees' amended petition, nor can it be said that its averments are, in legal effect, controverted by any affirmative plea contained in the original answer and counterclaim or either amendment thereto, the first amended answer and counterclaim merely corrects a mistake made in the original answer and counterclaim; the second only alleged appellant's ownership of a third of the May survey beyond the ridge from Shelby Creek, and neither amendment denies appellees' adverse possession, nor any other fact alleged in the amended petition in support of the pleas of limitation and champerty. So the averments of the amended petition as to appellees' adverse possession of the land in controversy, and its plea of the statutes of limitation and champerty, stand undenied.

Upon a resubmission of the case the Circuit Court adjudged appellees to be the owners of four-sixths of the May fifty acre tract of land and appellant the owner of two-sixths thereof; and further adjudged that appellees recover of appellant $33.33, as the value of four-sixths of the timber cut and removed by him from the

land. From that judgment the latter prosecutes this appeal, and appellees a cross appeal.

It appears from the record that Henry May, in 1850, obtained of the Commonwealth a patent to the fifty acre tract of land in controversy. Adjoining this tract and lying between it and the Big Sandy River, is another tract of fifty acres patented to William Adkins in 1841; and between it and the mouth of Shelby Creek a bottom tract consisting of only a few acres.

It is conceded by all the parties to the action, that May was the owner and in the actual, adverse possession of these three tracts of land from 1850 to 1859, although it is not made to appear how he acquired title to the Adkins land and smaller tract at the mouth of Shelby Creek. In 1859 the three tracts were sold by Henry May to A. J. Ford and conveyed by a single deed, which gave in detail the boundary of each tract. A. J. Ford took immediate possession of the three tracts, built him a house and barn on the Adkins tract near the river, cleared some of the land, planted an orchard and admittedly continued in the actual, adverse possession of that and the May tract, controlling and exercising acts of ownership over both to the outer boundary of each, as one farm, until his death, which occurred in 1870.

Ford's possession of the small bottom tract at the mouth of Shelby Creek did not continue so long, as he, sometime prior to 1870, sold and conveyed it to the father of appellant. Ford died intestate but was survived by six children, all adults, whose names appear in the record. The six children of A. J. Ford were J. W. Ford, Rebecca Francis, Henry J. Ford, Jennie Kipple, Kentucky Clay, alias Reese, and Mary Griffith. After the death of A. J. Ford, J. W. Ford, by purchase of same and proper deeds from the grantors, obtained title to the one-sixth interest each of Henry J. Ford ad Jennie Kipple, in the May and Adkins tracts of land. As J. W. Ford owned in his own right an interest of one-sixth in the lands and, by the deeds from Henry J. Ford and Jennie Kipple, acquired their interests of one-sixth each, his interest became three-sixths, or one-half of the whole.

In 1889, J. W. Ford and Rebecca Francis, by a joint deed, conveyed their respective interests in the lands in question to George Kellar; the interest thus conveyed Kellar being the three-sixths of J. W. Ford and the one

sixth of Rebecca Francis, constituting four-sixths of the two tracts.

In 1880, George Kellar and wife, who were then in actual, adverse possession of the lands, sold, and by proper deed, conveyed the four-sixths interest in the lands acquired by him under the deed from J. W. Ford and Rebecca Francis, to H. C. Sowards, appellees' grandfather. During the same year, H. C. Sowards, by purchase and deed from Mary Griffith and her husband, acquired her one-sixth interest in the lands, and in 1883 by a deed from Kentucky Clay and husband, acquired her one-sixth interest in the land. So, through the several deeds mentioned, H. C. Sowards obtained an apparently complete title to the whole of the Adkins and May tracts of land, and it is clear from the evidence that, upon receiving the deed from Kellar in 1880, he took actual, adverse possession of both tracts and that such possession continued down to 1899.

On May 16th, 1898, however, both tracts of land were sold by the sheriff of Pike County, as the property of H. C. Sowards, under an execution against him in favor of J. S. Cline and Hiram Williamson, which had previously been levied upon it. At the execution sale the two tracts of land were bought by the execution plaintiffs at the price of $98.61, which amount was less than two-thirds of its appraised value. Thereafter the purchasers at the execution sale, for a valuable consideration, assigned their bid and purchase to Morgan Sowards, Jr., the father of appellees and a son of H. C. Sowards. As H. C. Sowards did not redeem the property, Morgan Sowards, Jr., after the expiration of the right of redemption, obtained of the sheriff a deed conveying it to him, which deed was properly recorded. This deed described the Adkins and May tracts by metes and bounds, courses and distances, as given in the deed from Henry May to A. J. Ford.

When the sheriff's deed was executed H. C. Sowards surrendered the possession of the lands to Morgan Sowards, who remained in the actual, adverse possession thereof until his death, since which time his children, the appellees, have by like possession continuously held and claimed it as their property. It is, however, insisted for appellant that the deeds from A. J. Ford's heirs, under which appellees claim title, do not convey any part of the May fifty acre survey that lies between Shelby Creek and

the ridge that runs from a point near the creek, diagonally across the May tract; and that deeds from J. W. Ford and Henry J. Ford, heirs at law of A. J. Ford, executed in 1891, conveyed him two-sixths, if not more, of the entire May tract.

If the first of these contentions is tenable it would follow that the cutting of timber done by appellant was not on such part of the May tract as is covered by the several deeds made by the Ford heirs and Kellar to H. C. Sowards. But the contention is not supported by the deeds in question. The deeds from the Ford heirs to Kellar and H. C. Sowards do not describe the lands in which the grantors owned the respective interests conveyed, by metes and bounds, courses or distances, and it is true, as claimed by appellant, some of the deeds speak of it as "lying just below the mouth of Shelby Creek," but this is only a part of the description given; the entire description is as follows; "All their part and interest in a certain tract of land in Pike County, lying just below the mouth of Shelby Creek; *it being the farm owned by Jackson Ford at the time of his death. This conveyance is to convey all our interest in said farm as heirs at law of Jackson Ford, deceased.*"

The Adkins and May tracts of fifty acres each, were conveyed by Henry May to A. J. Ford in and by the one deed, the two tracts adjoining and constituting a farm, and but one farm, upon which A. J. Ford passed the remainder of his life. The two parcels were owned, controlled and possessed by him as one body of land or farm, which was known and spoken of while he lived and after his death, as "the Jackson Ford farm."

In point of fact the Adkins tract, though situated somewhat nearer the mouth of Shelby Creek than the May tract, does not lie, "just below the mouth of Shelby Creek," in the sense that it runs to or borders on the creek, at or below its mouth, for the third and smaller tract, conveyed with the May and Adkins tracts, to A. J. Ford by the deed from Henry May, and which the former later sold and conveyed the appellant's father, lies between the Adkins tract and the mouth of Shelby Creek and is, therefore, "just below the mouth of the creek."

Lands are frequently described, particularly in the older patents and deeds of this state, as lying or situated upon water courses, or north, south, east or west

thereof, which are only in the vicinity of such streams or water courses and, in many instances, several miles therefrom. So it is sufficient in locating surveys so described, to identify them as situated in proximity to or in the neighborhood of the stream or water course named. The rule is, of course, otherwise, where the survey is described as beginning on, calling for or running with the stream; as in that case the location of the survey must be determined by that of the stream.

It would not, however, be a misapplication of words to say that both the Adkins and May tracts lie "just below the mouth of Shelby Creek," for they are close to and below the mouth of the Creek; the Adkins survey being separated from the mouth of the creek by the small tract sold by A. J. Ford to Ratliff, and the May survey less than a fourth of a mile away. Moreover, according to the map found in the record, both surveys reach Shelby Creek and the May survey runs with that stream a greater distance than does the Adkins survey.

The testimony of J. W. Ford and H. C. Sowards that the deed from the former to George Kellar, did not convey so much of the May tract as lies between the creek and ridge, was incompetent and should have been excluded, as it tended to contradict the deed or give it a meaning not warranted by its language, which could not be done in the absence of fraud or mistake in its execution, neither of which was alleged or proved. Moreover, Sowards and Ford, with respect to the land in controversy, were appellees' grantors or vendors, and it is a well known rule of law that the declarations of the grantor against the title of the grantee, made after alienation of the property, cannot affect the grantee, unless acquiesced in by the latter. Cogar, &c., v. Nat. Bank of Lancaster, 151 Ky., 470; Ball, Sr. v. Irvin & Son, 21 R. 367.

It being manifest from the record, that the deeds from the children of A. J. Ford to George Kellar and H. C. Sowards, and that from Kellar to H. C. Sowards, invested the latter with the title to the interest of each of the heirs of A. J. Ford in the May, as well as the Adkins tract of land, and that the title thus obtained by H. C. Sowards passed to his son and appellees' father, Morgan Sowards, Jr., by the execution sale of the lands and deed from the sheriff, it follows that appellant has failed to sustain his contention that such part of the May tract as lies between

Shelby Creek and the ridge, was not conveyed by the deeds from the Ford heirs to Kellar and H. C. Sowards.

It is likewise manifest that he took no title to any part of the May tract by the deed he obtained from J. W. Ford and H. J. Ford in 1891, for, as already shown, their respective interests therein, and that J. W. Ford had purchased of Jennie Kipple, as well as the interest of each of them in the Adkins tract, had ten years before been sold and conveyed George Kellar, who, in turn, sold and conveyed them to H. C. Sowards.

It is, however, insisted for appellant, that as the deed from Kellar to H. C. Sowards had not been recorded when he received of J. W. and H. J. Ford the deed they executed to him in 1891, it was invalid as to him. In other words, it is argued that he had no notice of the conveyance from Kellar to H. C. Sowards, when he accepted the deed from J. W. and H. J. Ford, therefore, he was an innocent purchaser for value, for which reason the title to the interests in the May land conveyed him by the latter should prevail over that of appellees.

This contention is not sustained by the record. The evidence shows that when appellant received the deed from J. W. and H. J. Ford, he knew of the existence of the deed from Kellar to H. C. Sowards, for he obtained the deed from them upon the theory that the deed they, and other of the Ford heirs had previously made to Kellar, and that of Kellar to Sowards, did not embrace that part of the May tract lying between the creek and ridge.

But laying aside further consideration of this question, there can be no doubt of the fact that appellees, their father and his vendors, H. C. Sowards, A. J. Ford and the latter's heirs, have had and held the actual, continuous and adverse possession of the Adkins and May tracts, as one body of land and a single farm, claiming the ownership and possession thereof to the outer boundary of each tract, well marked and defined, for more than forty years next before the institution of this action, twice exceeding the statutory period of limitation.

It is true, appellant has, since 1891, claimed to own a part of the May tract, but he has not had actual possession of any part thereof until two or three years ago, when he erected a cabin thereon between Shelby Creek and the ridge, which was, for a while, occupied by one Meadows, as his alleged tenant.

Not only is appellees' actual, adverse possession of

the land in controversy, as claimed, established by the evidence, but, as stated in the outset of the opinion, it is undenied by any pleading filed in appellant's behalf. Indeed, the latter's pleadings do not allege any possession by him of the land, but merely allege title in him to a part thereof.

In addition to its being barred by the statute of limitations, appellant's claim of title is defeated by the statute against champerty, as appellees' vendors were, as shown by the evidence and not denied by appellant's original or amended answers, in the actual, adverse possession of the land in controversy, when he obtained the deed under which he claims title.

In view of the conclusions we have expressed, the Circuit Court manifestly erred in adjudging appellant any part of the land in controversy. Wherefore the judgment is affirmed on the original appeal and reversed on the cross appeal, and cause remanded with direction to that court to enter a judgment in conformity to the opinion.