## Irvin et al. v. Mumford et al.

(Decided January 25, 1929.)

526

JOHN STITES for appellants.

L. K. WOOD for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In this action of ejectment the appellees, who were the plaintiffs below, were successful, and the defendants, now appellants, have appealed.

The parties to this litigation are colored. In 1918 Kate Rowland conveyed to R. B. Irvin a lot containing 2 acres of land near the city limits of Hopkinsville. The consideration for this conveyance was the sum of $25 cash in hand paid, and a note for $50, to secure the payment of which the grantor reserved a lien on the land conveyed. Irvin at once entered into the occupancy and possession of the lot, and from that time on until his death in 1923 he had it under fence and kept his hogs there. He erected a barn upon it and sublet certain portions of it to other people in the neighborhood for the purpose of keeping their hogs. He paid all the taxes on this lot after he bought it, and during all this time it was continuously used by him in the manner we have indicated On his death in 1923, he left surviving him as his only heirs at law his widow, Fannie Irvin, and his sons, A. M. Irvin, B. L. Irvin, and R. S. Irvin, all of whom are the appellants herein. They continued in the occupancy and possession of the lot in the same fashion as had their ancestor during his lifetime from the time of his death up to the trial of this law suit. Their evidence, corroborated by that of neighbors who lived in the vicinity, further established that this lot was well known in the neighborhood as the Irvin lot. The appellees lived in very close proximity to this lot, and they admit that they knew of the possession of this lot by R. B. Irvin during his lifetime and after his death by the appellants. They claim, however, that the lot was known in the vicinity as the Rowland lot, but in this they are not corroborated by any one. R. B. Irvin never put his deed to

record. In September, 1926, Kate Rowland came to Hopkinsville and there offered to sell this lot to the appellees. She did not testify in this case. Perhaps she thought she had the right to sell the lot, since the lien note for $50 given her by R. B. Irvin had never been paid. The appellees testified that before they purchased the lot from Kate Rowland they went with her to see A. M. Irvin, who had been administrator of his father's estate, but who had settled his accounts as such, and who it seems, from the meager testimony in the record, had acted as a sort of agent for his coheirs in the management of this hog lot after his father's death. The appellees further testified that Kate Rowland in their presence asked A. M. Irvin if the Irvin heirs made any claim to this lot, that he answered "No," and that, relying upon this disclaimer, and after having gone to the courthouse and finding no conveyance of record from Kate Rowland to any one, they bought this lot for $75, took a deed, and had it put to record. A. M. Irvin denies the disclaimer attributed to him during this conversation with Kate Rowland. He says that Kate Rowland only asked him whether he was going to pay this lien note or not, and that he told her that he would if she would produce it. In passing, it may be said that the record seems to indicate that this lien note had been lost. After Kate Rowland had deeded the hog lot in question to the appellees, they demanded its possession of the appellants, and, on the refusal of the latter to yield such possession, this ejectment suit was brought, with the result stated.

The defense of the appellants is grounded upon the plea of champerty. Kentucky Statutes, sec. 210. The evidence overwhelmingly and without material dispute sustains that defense, except possibly as to A. M. Irvin, against whom an estoppel to plead such defense may exist. Even the appellees admit that they knew at the time they purchased the lot that the appellants were then in possession of it. They claim, however, to have thought that this possession was amicable to Kate Rowland and that the Irvins were her lessees. There is nothing in this record to support appellees in this thought, for the evidence shows that the possession of R. B. Irvin and after his death that of his heirs was at all times open, notorious, actual, and adverse to Kate Rowland and the world. Such a possession at the time of the conveyance from Kate Rowland to the appellees made the conveyance under our statute above cited champertous. Ratliff v.

Sowards' Guardian, 152 Ky. 97, 153 S. W. 25. The inquiry which the appellees made of A. M. Irvin and his disclaimer of title to the hog lot, if it be conceded that he made such disclaimer, could not affect the other appellants, for at the best A. M. Irvin was their agent only in the management of this hog lot, and hence had no authority, express or implied, to disclaim title to it so as to bind his coheirs. See 2 C. J. 648. His disclaimer can go no further than to estop him from pleading possession or title as against the appellees. Of course it is for the jury to say whether A. M. Irvin made the disclaimer appellees say he did. If the jury believes the appellees, then, so far as A. M. Irvin's interest is concerned, he plainly will be estopped to question the deed appellees took. It therefore follows that the court should have sustained the motions of the appellants Fannie Irvin, B. L. Irvin, and R. S. Irvin for a peremptory instruction, but properly overruled a like motion of A. M. Irvin. As to him, however, the instruction which the court gave was erroneous, in that it failed to require the jury to believe that the appellees, in purchasing the lot in question, did so relying upon the disclaimer they said A. M. Irvin made to them. If the evidence on the next trial be the same as that on the last one, the court will peremptorily instruct the jury in favor of the appellants Fannie Irvin, B. L. Irvin, and R. S. Irvin. As to A. M. Irvin, it will submit the issue only of whether he made the disclaimer alleged by the appellees or not, and, if so, whether the appellees purchased the lot in reliance upon such disclaimer or not. If the jury believes A. M. Irvin made such disclaimer and the appellees purchased the hog lot relying upon such disclaimer, then, so far as A. M. Irvin's interest only is concerned, their title is superior to his.

Judgment reversed, with instructions to grant the appellants a new trial in conformity with this opinion.