THOMAS McROBERTS and Another v. WILLIAM McARTHUR and Others.[1]

Oct. 30, 1895.

Nos. 9541—(33).

**Deed—Description.**

It is one of the essential elements in the description of real property in a conveyance that it must be sufficiently certain to furnish the means for identification of the premises intended to be conveyed; and, if it is too vague and uncertain for this purpose, the instrument containing it is inoperative and void. But a description is sufficient if the court can, with the aid of extrinsic evidence which does not add to, enlarge, or in any way change the description, fit it to the property conveyed by the deed.

**Adverse Possession—Distinct Tracts.**

The adverse possession of one distinct piece of land will not draw to it the constructive possession of another vacant and distinct piece owned by another person, although the adverse occupant holds a paper title by an instrument wherein the described boundaries are coextensive with both pieces of land.

Appeal by defendants from an order of the district court for Houston county, Whytock, J., denying a motion for a new trial. Modified.

*Geo. H. Gordon* and *Wells & Hopp*, for appellants.

*Tawney, Smith & Tawney* and *E. H. Smalley*, for respondents.

BUCK, J.    This action is brought to determine the adverse claims of the parties to 14 acres of land situate in the N. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of section 10, in township 104, of range 24, in the county of Houston, in this state.    Both parties claim title from Peter

[1] Reported in 64 N. W. 903.

Cameron, who died in 1855. Prior to his death, Peter Cameron, who then owned the premises, deeded that portion in controversy to one Charles H. Hibbard, on May 8, 1854. By various mesne conveyances from Hibbard and others, the record title to the undivided two-thirds of the premises appeared to be in McRoberts in 1875, and he attempted to obtain title to the other third thereof by purchase on March 22, 1875, from Amos G. McCampbell, who then had a record title. The deed of that date from Amos G. McCampbell and wife to McRoberts purported to convey one-third of the premises in question, but the description in the deed is as follows: "The undivided one-third part of fourteen acres of land, a part of the northeast quarter of the southwest quarter of section number ten, township one hundred and four, range four, * * * in the town of La Crescent, situated in the county of Houston, state of Minnesota." When the plaintiffs offered this deed in evidence, it was objected to by the defendants upon the grounds that the description was uncertain and indefinite. The objection was overruled, and the deed admitted. We are of the opinion that the objection was well taken.

It is one of the essential elements in the description of real property in a conveyance that it must be sufficiently certain to furnish the means for the identification of the premises intended to be conveyed; and, if it is too vague and uncertain for this purpose, the instrument containing it is inoperative and void. Here the premises could not be identified by name, location, monument, courses, distances, or numbers, and the ambiguity is patent upon the face of the instrument itself. "A patent ambiguity is that which remains uncertain after all the evidence of surrounding circumstances and collateral facts, admissible under proper rules of evidence, is exhausted." Kretschmer v. Hard, 18 Colo. 223, 32 Pac. 418. It would be impossible for an experienced surveyor to locate any land described in this deed. Standing alone, the description is not only so indefinite and uncertain that it is absolutely void, but it could not possibly be helped by oral testimony. Whether an action might be brought to reform the description, we are not called upon to determine; but it is very apparent that, as the description now stands, it is so vague that the deed is insufficient to be effectual as a valid deed of conveyance.

But this rule does not apply to the deed from Peter Cameron to Charles H. Hibbard, dated May 8, 1854, because the point of beginning could be, and was, ascertained by extrinsic evidence. It commenced at a point on the boundary line between the N. W. ¼ and the S. W. ¼ of section 10, in township 104, of range 4, in Houston county, where the public highway running from Taylor's Point, in said county, to Thompson's Mill, intersected said boundary line. This starting point might be, and was, identified by parol evidence. In such a case it is not essential that the highway should be a legally laid out road, and made a matter of record. Peter Cameron assisted in circulating a petition for the laying out of this highway, and presented it to one of the board of county commissioners, for the purpose of having the road laid out legally. The road was surveyed, and Peter Cameron dictated where it should run, and assisted, also, in surveying it. It was at a point where the survey intersected the line between the N. W. ¼ and the S. W. ¼ of section 10 that the description in the deed commences, and this was a point which actually existed in the highway upon the ground when the deed was executed. The grantor, Peter Cameron, having fixed the point himself where the description should begin, and which could easily be ascertained by the surveyor, we think the description sufficiently definite in this respect,—at least, as against Cameron and his successors in interest,—whether the highway was in all respects a legal one or not. It is the existence of a fact susceptible of determination with certainty that forms the basis for a good description in a conveyance, and not the question of whether that fact sprang into life through some legal proceedings. Where both parties to the conveyance know what is being sold, and the court can, with the aid of extrinsic evidence, apply the description to the exact property sold, it is enough. Bacon v. Leslie, 50 Kan. 494, 31 Pac. 1066. In this case the parol evidence did not add to or enlarge the description, or in any way change it, but it enabled the court to fit the description to the property conveyed by the deed.

The next question is that of adverse possession. The only real act tending to prove ownership is that of the defendant Daniel Cameron, who cut some wood upon the premises in the winter of 1858. We do not refer to the exercise of any act of ownership during the last eight or nine years. The mere act of cutting wood

during one season upon vacant and uninclosed land would not cre-
ate title by adverse possession. Washburn v. Cutter, 17 Minn. 335
(361). It does not appear that the defendants other than Daniel
Cameron have been in the possession of the premises in contro-
versy, or that they ever exercised acts of ownership over it, during
a period of either 20 or 15 years prior to the commencement of this
action. · But it is claimed that the defendant Daniel Cameron en-
tered into the actual possession of the E. ½ of the S. W. ¼ and the
W. ½ of the S. W. ¼ of section 10 under color of title, by a deed
from Daniel Cameron, Sr., in 1857, and has maintained absolute
and notorious possession of the premises ever since. To sustain
this contention they assert that, for more than 20 years, Daniel
Cameron has had a field fenced on the east end of the 80 acres,
which incloses the 14 acres in controversy. This fence, however,
did not inclose the land in controversy, and we do not find that it
was built for the purpose of inclosing it either for cultivation ·or
pasturage.

It will be observed that the deed to the defendants covers a
quarter section of land, and that the 14 acres in controversy are
nearly in the center of the premises; and the defendants contend
that, because they claim under color of a paper title, the extent of
their constructive possession should be deemed coextensive with
the boundaries in the instrument under which they claim adversely.
Whatever may be said of the soundness of the doctrine, it is now
generally held by the courts that a party's possession under color
of title is regarded as coextensive with the entire tract described
in the instrument under which he claims title, provided no part of
it is in the adverse possession of any one else. But there should
be qualifications and limitations to this general rule. The essen-
tial ingredients necessary to create title by adverse possession are
these: "The possession must be actual, open, continuous, hostile,
exclusive, and accompanied by an intention to claim adversely."
Sherin v. Brackett, 36 Minn. 152, 30 N. W. 551; Dean v. Goddard,
55 Minn. 290, 56 N. W. 1060. The deed from Peter Cameron to
Charles H. Hibbard in 1854, conveying the legal title, drew to it
the constructive possession, of the 14 acres. This was vacant and
unoccupied land, and the owners were not bound to take actual
possession for the purpose of protecting it against intruders or

trespassers. Where the adverse possessor is keeping his flag fly-ing upon his own premises, or upon those of another, it is not notice that he is still invading some other person's land, with the intent to wrest it from him. In other words, the adverse possession of one distinct piece of land will not draw to it the constructive pos-session of another vacant and distinct piece owned by another per-son, although the adverse occupant holds a paper title by an in-strument wherein the described boundaries are coextensive with both pieces of land. The improvements made by the defendants upon their own land were no warning to the plaintiffs that their land was invaded. Whatever the defendants did upon their own land was of no concern to the plaintiffs. Knowing the extent and boundaries of their own land, it was sufficient for the plaintiffs to know that no hostile occupant had entered upon it; and they had the legal right to rely upon the law that defendants, while upon their own land, could not, by any constructive possession, de-prive the plaintiffs of their title thereto.

It is further contended that the plaintiffs should have shown a good title before the defendants were required to make any proof whatever. Whatever force there might have been in this conten-tion of the defendants, if they had submitted the case when the plaintiffs rested, is obviated by the fact that the defendants not only demanded affirmative relief in their answer, but they cured the deficiency in the evidence by the introduction of evidence going to show that the common source of title of both parties was through Peter Cameron. Keith v. Briggs, 32 Minn. 185, 20 N. W. 91; Deakin v. Chicago, M. & St. P. R. Co., 27 Minn. 303, 7 N. W. 268; Berkey v. Judd, 22 Minn. 287.

The introduction of the record evidence of a copy of the unofficial entry list, showing that Peter Cameron obtained his title from the United States, became immaterial, because, as we have stated, the appellants attempted to establish their title to the premises through the same grantor, Peter Cameron; and such error, if any, was thereby cured by the defendants' own acts.

Our conclusion is that this case be remanded to the district court of the county of Houston, wherein said premises are situate, and the district court therein is directed to enter judgment in favor of the plaintiffs to the undivided two-thirds of the 14 acres de-

scribed in the complaint, and that as to the other one-third of the said premises, wherein title is claimed by the plaintiffs to have been derived through the McCampbell deed, a new trial is hereby ordered.