## AMELIA HUNT v. HENRY KEYE.[1]

October 21, 1921.

No. 22,349.

**Boundary — courses and distances yield to monuments.**

1. Courses and distances shown on a plat must yield to the monuments and fixed points shown thereon if inconsistent therewith.

**Street bounded by right of way — platted width yields to actual width.**

2. Where the plat of a townsite locates a street along and adjoining a pre-existing railroad right of way which, in fact, is only 75 feet in width on each side of the track, but is marked on the plat of the townsite as 100 feet in width on each side thereof, the width marked on the plat must yield to the true width, and the right of way as it actually existed on the ground forms the boundary of the street.

Action in the district court for Marshall county to restrain defendant from trespassing and $300 treble damages. The case was tried before Grindeland, J., who at the close of the testimony discharged the jury on the ground that if plaintiff was entitled to recover at all it would be only nominal damages, made findings and ordered judgment in favor of defendant. Plaintiff's motion for amended findings or for a new trial was denied. From the order denying his motion for a new trial, plaintiff appealed. Reversed.

[1]Reported in 184 N. W. 840.

*A. N. Eckstrom,* for appellant.

*E. A. Brekke, Julius J. Olson* and *Rasmus Hage,* for respondent.

TAYLOR, C.

The controversy in this case is over the location of a boundary line in the townsite of Middle River located in the south half of the southwest quarter of section 10 in township 156 north of range 48 west in Marshall county. The townsite was platted two years or more after the St. Paul, Minneapolis & Manitoba Railway had been constructed across this section, and lies on both sides of the railroad right of way. A copy of the plat will be found on page 144:

# TOWN SITE OF MIDDLE RIVER, MARSHALL COUNTY, MINN.

Scale 100 Feet To 1 Inch

Ash avenue, 50 feet in width, extends along the eastern side of the railroad right of way parallel with the railroad track. Bridge avenue, 70 feet in width, extends from Ash avenue to the river at a right angle to the railroad track. Block 3 is bounded on the south by Bridge avenue, on the west by Ash avenue, and on the north and east by the river. It is divided into two parts by an alley, 20 feet in width, extending from Bridge avenue to the river, parallel with Ash avenue and distant 140 feet therefrom. The portion of the block between Ash avenue and the alley is subdivided into 12 lots fronting on Ash avenue, numbered consecutively 1 to 12 beginning at the north, and each 25 feet in width except lot 1. The portion of the block east of the alley is subdivided into 9 lots fronting on Bridge avenue and extending from that avenue to the river, numbered consecutively 13 to 21 beginning at the alley, and each 50 feet in width except lot 21 which is bounded on the east and north by the river.

Defendant is the owner of the 12 lots fronting on Ash avenue and testified that he had lived there 24 years. Plaintiff is the owner of lots 13, 14 and 15 fronting on Bridge avenue and has occupied them as a home since 1892. Her dwelling house is on lot 13 which adjoins the alley. Joseph Le Blance is the owner of lots 16, 17 and 18 and has occupied them since 1894. Dan Erickson is the owner of lots 19, 20 and 21, having purchased them shortly before this suit. How long they had been occupied does not appear. While perhaps not important in this case, it may be proper to mention that a public highway has been established along the section line which forms the south boundary of the townsite; that Bridge avenue, or that part thereof not included in this highway, has been vacated, and that the owners of lots in block 3 have acquired that portion of Bridge avenue and of block 4 lying between their respective lots and this highway, thus making this highway the south boundary of their several properties.

Until shortly before the acts which led to this lawsuit, all the owners of lots in block 3 unquestionably understood that the railroad right of way was 75 feet in width on each side of the center line of the railroad track, for they located the east and west boundary lines of their respective properties by computing the distance of such lines from the

150 M.—10.

railroad track, allowing 75 feet for the right of way, and have occupied, improved and used such properties to the boundaries so located ever since acquiring them, a period of more than 20 years on the part of both plaintiff and defendant. The village officers also seem to have understood that Ash avenue was only 75 feet from the railroad track, for they graded it as so located.

Defendant learned that the right of way was marked on the plat of the townsite as 100 feet in width on each side of the railroad track, and in October, 1919, claimed that his eastern boundary line was 290 feet from the track, being 100 feet for the right of way, 50 feet for Ash avenue and 140 feet for the depth of his lots, and measured off this distance from the center line of the track and began constructing a fence along the line so located and from this line along his south line. According to his contention the boundary lines of the lots in block 3 are 25 feet east of the lines which have always been recognized and accepted as such boundary lines. Moving these lines 25 feet east will bring Ash avenue within less than one foot of defendant's own house, will bring the alley within a few inches of plaintiff's house, will place plaintiff's barn partly on defendant's land and partly in the alley, will place the walk from plaintiff's house to the highway partly in the alley, and will place a row of trees set out by plaintiff several years ago along her side of the alley, as previously located and traveled, on defendant's side of the alley. Defendant dug post holes for his east fence along this row of trees, and in doing so cut the roots of those trees. He extended the fence which he was constructing along his south line to this line, thereby cutting off access to the alley as previously located and traveled. Thereupon plaintiff brought this action in trespass and asked for an injunction restraining defendant from continuing the trespass. The trial court found that the alleged trespass was not committed on plaintiff's property and directed judgment for defendant. Plaintiff appealed from an order denying a new trial.

At the trial the controversy was whether the distance between Ash avenue and the railroad track was 75 feet or 100 feet. If 100 feet as claimed by defendant, the acts complained of were committed on his property; if only 75 feet, as claimed by plaintiff, a part of these acts

were committed on plaintiff's property. Both parties took the railroad track as the point from which to measure in locating the disputed lines, and neither of them caused any survey to be made for the purpose of locating such lines from the other monuments or fixed points shown on the plat.

From the record we take it as established and as practically conceded that the right of way is in fact only 75 feet wide on each side of the track. But defendant contends that the width marked on the plat is conclusive on the lot owners, and that they must locate their lot on the ground on the hypothesis that the right of way on the east side of the track is 100 feet in width as marked on the plat, although it is actually only 75 feet in width. We are unable to sustain this contention. It is thoroughly settled that, in locating lines and boundaries according to prior surveys, courses and distances must yield to monuments, fixed points, and the boundaries of adjoining lands established before the survey in question and shown on the plat or record thereof. Obert v. Board of Co. Commrs. of Otter Tail County, 122 Minn. 20, 141 N. W. 810; Sandretto v. Wahlsten, 124 Minn. 331, 144 N. W. 1089; Lawler v. Counties of Rice and Goodhue, 147 Minn. 234, 180 N. W. 37; 4 R. C. L. 100.

It is admitted that the railroad still remains as it existed at the time of laying out the townsite. In his certificate indorsed on the plat, the surveyor states that the railroad is "the line upon which the townsite is laid out." This certificate gives the width of the streets and alleys, and the dimensions of the full lots, and states that the other lots are as exhibited on the plat, but says nothing concerning the width of the right of way. The plat shows that Ash avenue adjoins the right of way—the eastern boundary of the right of way forming the western boundary of the street. The plat, taken in connection with the surveyor's certificate, shows that the townsite was laid out with reference to the right of way, and, consequently, the courses and distances on the plat must yield to the true location and actual boundaries of the right of way as it in fact existed on the ground. It was a fixed and definite monument and must be given effect as such. It follows that the finding, to the effect that

defendant had committed no trespass on the property of plaintiff, is not sustained by the evidence, and the order denying a new trial is reversed.