# FIRST NATIONAL BANK OF DETROIT v. NORTHWESTERN TRUST COMPANY AND ANOTHER.[1]

July 11, 1930.

No. 28,000.

[1]Reported in 231 N. W. 790.

*Boyesen, Otis & Faricy,* for appellant.
*W. B. Carman,* for respondent.

HOLT, J.

The defendant Northwestern Trust Company, trustee for St. Paul Seminary under deed of trust of Mary T. Hill, appeals from an order denying its motion for a new trial.

The controversy arises in this manner: In 1915 R. C. Madsen became the owner of the northeast quarter of the southwest quarter and the fractional government lot 3 to the west thereof and government lot 2 to the north thereof, all in section 11, township 139, range 41, Becker county, this state. He also owned a small tract in section 10 adjacent to the southwest corner of lot 3. Several mortgages were placed thereon, and four small parcels in the northeast corner of lot 2 were conveyed to different parties. Government lots 2 and 3 were bounded on the west and north by Little Floyd Lake. In 1917 he caused a strip of the lake front of about 2,000 feet in length and 233 feet in width running from the west boundary of lot 3 easterly and northeasterly to be platted as Madsen's Grove into 34 lots, dedicating the streets to the public. The record does not show the size of the lots or from which end the numbering starts, but from the exhibits it is to be inferred that they front a street or road on the south and the lake shore on the north. In order legally to plat this strip releases were obtained from the existing mortgages. Thereafter in December, 1920, a mortgage for $2,617.46 was executed and recorded upon the lots in controversy to one Bilstad by Madsen. This mortgage remained an encumbrance of record until March, 1923. On March 1, 1921, Madsen, to secure his $5,000 note, mortgaged the land first above described, excepting the four small parcels theretofore conveyed by him to Hamilton, Sedberg and Ohman in the northeast corner of lot 2, Madsen's Grove not being mentioned, the mortgagee being the defendant Northwestern Trust Company. The mortgagor covenanted

that the premises were free and clear of encumbrances. It was recorded March 3, 1921, at 3 p. m. This mortgage and debt the mortgagee thereafter sold and assigned to itself as trustee for St. Paul Seminary under deed of trust of Mary T. Hill. On March 1, 1921, Madsen, to secure $1,050, mortgaged to Merchants National Bank of Detroit practically the same land as to the Northwestern Trust Company and subject to its $5,000 mortgage. This was recorded March 3, 1921, at 3:10 p. m. On March 1, 1921, Madsen, to secure $1,881.31, mortgaged to L. J. Norby practically the same described premises as in the mortgage to Northwestern Trust Company and also specifically the lots in Madsen's Grove now in dispute. This mortgage was made subject to $8,667.46 existing encumbrances and was recorded at 3:20 p. m. March 3, 1921. The existing encumbrances are the Bilstad mortgage of $2,617.46, appellant's of $5,000, and the Merchants National Bank's of $1,050. Through foreclosure of the Norby mortgage plaintiff claims title to 19 certain lots in Madsen's Grove.

The suit is to determine adverse claims to the lots mentioned. The complaint alleges that plaintiff is the fee owner in possession of the lots, describing them. The answer of appellant admits this, but as a counterclaim sets up and claims the mortgage of March 1, 1921, given to defendant Northwestern Trust Company to be a lien thereon superior to the rights of plaintiff. The Northwestern Trust Company has answered only in its representative capacity as trustee. It is assumed that as such it stands no better and no worse than the company individually, and there will be no need of keeping in mind a distinction between the two. The answering defendant will be referred to hereinafter as appellant. The reply admits the execution of appellant's mortgage, but "alleges in that connection that it was not the intent of said parties that said mortgage should cover the premises described in plaintiff's said complaint and that said mortgage did not so cover said premises."

The assignment of the mortgage by the defendant trust company to itself as trustee is admitted, but in connection with that admission it is alleged that at the time of said assignment said defendant had

full knowledge "that said mortgage was not intended to cover and did not cover the premises described in plaintiff's complaint." The finding was in effect that the mortgage was not a lien upon the lots described in the complaint and that neither of defendants has any right, title, interest, lien or claim thereon. There was no express finding that the parties to the mortgage did not intend the mortgage to cover the lots described in the complaint, but the memorandum attached to the findings makes clear that this was the basis of the decision, for it states:

"Viewing the case from all of the facts and circumstances appearing in the evidence the court has no hesitancy in finding that the mortgage relied upon by the defendant trustee was not intended by any of the interested parties to cover the lands here in controversy."

The question is: Does the record contain competent evidence justifying the learned trial court in arriving at the conclusion just stated? R. C. Madsen gave the mortgage which is the source of plaintiff's title on the same day he gave the mortgage under which appellant claims, the latter being recorded 20 minutes before the former. There can be no doubt of the fact that the mortgagor did not intend the two mortgages to cover the lots in Madsen's Grove. But that is not enough. The evidence must also show that appellant mortgagee did not intend that its mortgage should embrace lots in Madsen's Grove. Upon the face of the mortgage it covers or conveys all of government lots 2 and 3, except the four parcels therein excepted, and those excepted do not include the lots in Madsen's Grove claimed by plaintiff. The first contention of appellant is that oral testimony was not admissible to show that the parties did not intend to exclude any part included in the description. Although there was some oral testimony, it did not relate to any verbally expressed intention of either mortgagor or mortgagee; it related merely to the situation of the parties with respect to the title, the abstract furnished, the examination thereof by the trust company's attorneys, and the examination of the property by its agent pursuant to the understanding between the parties. We think

all the evidence offered and received was properly admissible if the rule is applicable which is stated thus in Witt v. St. P. & N. P. Ry. Co. 38 Minn. 122, 127, 35 N. W. 862, 864:

"The cardinal rule of construction is to ascertain and give effect to the intention of the parties to the deed; and to this end the court must consider all parts of the instrument, and the construction must be upon the entire deed, and not upon disjointed parts of it. And if the language is ambiguous, and it is necessary in order to ascertain the intent of the parties, evidence of the circumstances, including the situation of the parties and of the property, and the state of the title, may be received."

Appellant contends the rule is not applicable because the mortgage itself creates no ambiguity, its description is clear. But if ambiguity or uncertainty arises when an instrument is to be applied to the subject matter thereof, evidence of extraneous circumstances may be resorted to. This thought was applied and expressed in Wilmot v. Minneapolis A. T. Assn. 169 Minn. 140, 142, 210 N. W. 861, in these words:

"The duty of courts is to apply contracts to their subject matter and so effect the purpose of the parties. Their interpretation is incidental. To accomplish the main object resort may and frequently must be had to the circumstances under which the contract was made and, if there be need for resort to extraneous aids to construction, it is immaterial whether such need arises from an uncertainty in the instrument itself or, that being clear standing alone, it ceases to be so and ambiguity arises when the contract is applied to its subject matter. In either case construction must follow and resort must be had to the aids furnished by extrinsic circumstances. The prohibition of the law is not against their being used for interpretation but against making them the instruments of contradiction of an expressed contractual intent. The old distinction between patent and latent ambiguities, never more than 'an unprofitable subtlety' (Thayer, Preliminary Treatise on Evidence, 424), 'so far as contracts are concerned  *  *  *  may be wholly disregarded.'"

In case of a mortgage the problem is to apply the description to the land intended to be mortgaged. In this instance does an ambiguity arise, and, if so, do the circumstances already stated and those about to be mentioned clearly show an intent of the parties to appellant's mortgage not to include therein Madsen's Grove?

As usual, before this mortgage was executed there was written application by Madsen for a loan and an abstract of the property to be mortgaged furnished and examined by competent attorneys at St. Paul, the place of business of appellant. The application came through Merchants National Bank of Detroit, and there appears to have been an arrangement between this bank and appellant that if upon inspection of the premises, when the snow was gone so an inspection of a farm could be properly made, the loan was not deemed acceptable to appellant, the bank would take it off appellant's hands. Appellant produced the application, the abstract, the opinion of the attorneys, and the report of the person appellant sent, in June, 1921, to examine the farm pursuant to the arrangement mentioned. It is not to be presumed that appellant intended to have the mortgage cover land not included in the abstract. The abstract contains an "amended caption," which clearly excepts or excludes references to instruments affecting the platted Madsen's Grove, giving by metes and bounds the description thereof as in the plat. If the other caption is considered, there is a discrepancy between that and the caption in the attorneys' opinion, for in the latter there are excepted two more deeds to small parcels than in the so-called original caption, which contains no date as to when made. The trial court was justified in concluding that the amended caption was upon the abstract as of the date therein certified— February 17, 1921—and that at the time of the record of the mortgage, March 3, 1921, at 3 p. m., when the continuation of the abstract was certified showing a release of the prior mortgages and that appellant's mortgage was a first lien on the land therein described excluding Madsen's Grove (for it could not be a first lien on the lots in Madsen's Grove because of the Bilstad mortgage) the one who obtained for appellant or acted for it in obtaining this last

certificate must have known that the lots in controversy were not included in the abstract and hence were not intended to be mortgaged. There is some testimony that the abstract was not always in appellant's custody; but there is nothing to suggest that plaintiff or the mortgagor had made the change in the caption of the abstract subsequent to the date of its certificate February 17, 1921, or that either had had possession thereof. In any event, this was for the trial court.

Another matter bearing on the intention of the parties is that when the examiner of the mortgaged premises was sent by appellant to look over the farm he made a plat thereof coloring the same so as plainly to indicate that Madsen's Grove, a 200-foot strip between a road on the north boundary of the farm and the shore of Little Floyd Lake, was not included. Appellant had constructive notice of the plat of Madsen's Grove and of the fact that several lots thereof had been conveyed prior to March 1 and the deeds recorded. Also that a mortgage existed of record on that date to Bilstad upon the lots in controversy. That no release or satisfaction was sought or obtained from this mortgage, but that all encumbrances (and there were several) within the description in appellant's mortgage, excluding Madsen's Grove, were satisfied and released at the same time that appellant's mortgage was recorded. All this, with the fact of the covenant in the mortgage that the mortgaged premises are free and clear of all encumbrances, indicates an intention of the mortgagee as well as mortgagor not to include the encumbered and conveyed lots in Madsen's Grove. There is no testimony that appellant did not have actual knowledge of the records in the register of deeds' office pertaining to government lots 2 and 3, viz: the plat of Madsen's Grove, the Bilstad mortgage thereon, and the deeds to several lots therein. The whole transaction between all concerned except Bilstad seemed to have been closed at the same time, namely at 3 p. m. March 3, 1921, when appellant's mortgage was filed for record as a first lien on the Madsen farm exclusive of Madsen's Grove, on which rested the Bilstad mortgage, and ten minutes later was filed the Merchants National Bank mortgage of $1,050 becoming a second lien, and ten

minutes later was filed the Norby mortgage (plaintiff's source of title) covering the farm and also expressly the lots in Madsen's Grove in controversy, but subject to $8,667.46 encumbrances, being the sum total of Bilstad's, appellant's, and Merchants National Bank's mortgages. The inference is that the whole transaction was closed by the Merchants National Bank of Detroit through which Madsen's application for the loan came to appellant, and that bank no doubt had knowledge of the whole situation, judging from the language of the instruments executed March 1, 1921, and filed March 3, 1921, in the order above stated. We think the trial court was justified in concluding that the intention of both parties was not to include Madsen's Grove in appellant's mortgage; therefore the finding should be sustained that said mortgage and its foreclosure constitute no lien or claim upon plaintiff's title to the lots described in the complaint.

That the intention of the parties may be sought in their situation, in the state of the title, and in the circumstances surrounding the transaction when either there is ambiguity in written contract or it arises in applying the writing or description therein to the subject matter of the contract, has been held under a variety of conditions in this court, and as instances may be given: In re Robbins, 34 Minn. 99, 24 N. W. 356, 57 Am. R. 40; Wait v. May, 48 Minn. 453, 51 N. W. 471; Owsley v. Johnson, 95 Minn. 168, 103 N. W. 903; Lawton v. Joesting, 96 Minn. 163, 104 N. W. 830; White v. Jefferson, 110 Minn. 276, 124 N. W. 373, 641, 125 N. W. 262, 32 L.R.A. (N.S.) 778, 784; Tucker v. Mortenson, 126 Minn. 214, 148 N. W. 60. McGrath v. Pothen, 168 Minn. 206, 209 N. W. 752, may also be cited, two deeds being executed on the same day, while here appellant's mortgage and the Norby mortgage were executed on the same day with the description of the property the same except that the latter also covered Madsen's Grove.

We realize the force of appellant's contention that on the face of the mortgage ambiguity is not disclosed so as to give occasion for search of the intention of the parties. Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740; and Haycock v. Johnston, 81 Minn. 49,

83 N. W. 494, 1118, are cited, together with like decisions from other jurisdictions. In some of the latter the decisions seem to turn on the fact that in the action no relief was available unless reformation had first been sought. In the Beardsley case, 52 Minn. 537, 54 N. W. 740, the intention was not involved; and in the Haycock case, 81 Minn. 49, 83 N. W. 494, 1118, an action for rent, the point seemed to be whether oral testimony could be received to change the written lease. Appellant cites Baker v. Clay, 101 Mo. 553, 14 S. W. 734, which is in his favor upon a similar state of fact, in that the government description included a plat of a portion of the described land into lots, some of which had been conveyed. This case appears not to have been cited as authority except once in Potter v. Beck, 89 Kan. 569, 132 P. 177, 178; but the Kansas court evidently recognizes the rule of the intention of the parties as we apply it, for it says [89 Kan. 571]:

"The mortgage [in the Kansas case] was executed before any conveyances of the platted part of the tract had been made. The description, according to the usual subdivisions of the section, was apt and complete. In the absence of evidence to the contrary it must be presumed that the intention was to mortgage the property described and not merely a part of it. An exception or reservation will not be presumed merely because part of the property has been platted."

The implication from this language is that circumstances such as condition of title and instruments executed at the same time may be received as evidencing the intention of the parties.

As indicated above, some cases cited by appellant have intimated that relief might have been had if instead of the action brought reformation of the instrument on the ground of fraud or mistake had been sought. Riley v. North Star Mining Co. 152 Cal. 549, 93 P. 194; Ratliff v. Soward's Guardian, 152 Ky. 97, 153 S. W. 25; Yarbrough v. Clarkson (Tex. Civ. App.) 155 S. W. 954. Here plaintiff was in possession and its title is conceded; hence the reply that defendant's mortgage was not intended to cover plaintiff's lots was

not a departure, as in James v. City of St. Paul, 72 Minn. 138, 142, 75 N. W. 5, 7, where it was said:

"Many cases may arise where the plaintiff may, in such an action as this, set up in his reply facts which entitle him to have the instrument under which defendant claims in his answer reformed in equity."

However it is not necessary to ask for nor have a decree of reformation when, as here, plaintiff is in possession and has title in fee and it appears that the one who asserts a lien cannot in equity do so because the instrument under which the claim is asserted is subject to reformation so as to exclude it from being a lien on the premises involved. In that respect the instant case is like School Dist. No. 73 v. Wrabeck, 31 Minn. 77, 16 N. W. 493; Scofield v. Quinn, 54 Minn. 9, 55 N. W. 745; Alt v. Graff, 65 Minn. 191, 68 N. W. 9; Leach v. Leach, 162 Minn. 159, 163, 202 N. W. 448, 450. In the last cited case it is stated:

"Instead of following the cumbrous mode of procedure which formerly prevailed, she could plead defensively any facts which would give her a right to have the note reformed. An actual reformation was not necessary, for, if the right to a reformation is shown, the court should treat the defective instrument as reformed."

So here there was no need of a formal reformation. Appellant's counterclaim asserted a mortgage lien to the lots it conceded plaintiff possessed and owned in fee, and plaintiff asserted by the reply and showed by proof that the parties did not intend the mortgage to cover plaintiff's lots. The mortgage was a valid lien to the rest of the premises therein described to which plaintiff asserted no title. The only thing necessary was that appellant's be adjudged not a lien, claim or interest upon the lots owned by plaintiff. This view makes unnecessary any of the findings requested.

We think the abstract with "amended caption" and attached map or drawing of the farm (exhibit 1) was properly received. It was for the trial court to say whether proper foundation was laid. The testimony of the two employes or officers of the mortgagee having

charge of its farm loans in 1921, who testified that the "amended caption" and map were not attached to the abstract must, in the nature of things, be unreliable, for many hundred farm loans must have passed through their hands since then. The reason given by one of those witnesses for his belief, that if those items had been attached he would not have had to write for a map, as he did, is rather convincing· that he felt the need of one and got it before the loan was closed and in the shape it is now on the abstract. No other map was produced except the one the examiner made (exhibit 3) which was also received over appellant's objection. In view of the arrangement appellant had with the Merchants National Bank of Detroit, hereinabove referred to, we think no prejudicial error resulted.

The order is affirmed.

[1]Reported in 231 N. W. 797.