ROBERT C. NEILL AND ANOTHER v. JOHN HAKE, JR., AND OTHERS.
DON F. BINDERIM AND OTHERS, RESPONDENTS.

93 N. W. (2d) 821.

December 26, 1958—No. 37,499.

112

*Oscar C. Ronken,* for appellants.
*Schacht & Schacht,* for respondent.

THOMAS GALLAGHER, JUSTICE.

On April 26, 1954, Robert C. Neill instituted this action to quiet title to certain premises in the city of Rochester as follows:

The westerly 65 feet of the northerly 150 feet of outlot 7 in Cummings Addition to Rochester; and also a tract beginning at the northwest corner of outlot 7; thence extending easterly along the north line thereof a distance of 65 feet; thence northerly at right angles a distance of 23 feet to the southerly line of Center Street West in the city of Rochester; thence westerly at right angles along the south line of said street a distance of 65 feet; thence southerly at right angles a distance of 23 feet to the place of beginning.

Defendant Don F. Binderim claims title to the southerly 5 feet of the westerly 45 feet of the above tract claimed by plaintiff and further claims ownership of a driveway or alleyway extending westerly and easterly across plaintiff's premises 18 feet in width north of and adjacent to such 5-foot tract.

The trial court's findings in substance included the following:

Between the years 1913 and 1938 a strip of land was used and maintained by the city of Rochester as a *public alley,* viz.:

Commencing on the west side of outlot 7 at a point 127 feet south of the northwest corner of said outlot, running thence easterly at right angles a distance of 65 feet; thence at right angles south a distance of 18 feet; thence at right angles west a distance of 65 feet; thence at right angles north a distance of 18 feet to the place of beginning (hereafter referred to as the alley); and that no official action was ever taken by the common council of the city of Rochester to vacate such alley.

The predecessors of plaintiff recognized the north boundary of the alley as their south boundary; and the predecessors of defendant recognized the south boundary of the alley as their north boundary. Each successive grantor assumed to own and to pass title to the half of the alley adjacent to their respective occupied properties by intending to describe the land adjacent thereto.

On February 15, 1950, the alley was not used as a public thoroughfare and was not occupied exclusively by any individual property owner adjoining it or by anyone else. On that date Frederick L. Newhouse, defendant's predecessor in title, was in possession of the land south of the alley including the 5-foot tract in dispute and on that date conveyed all of it to defendant. Shortly thereafter defendant took possession of and improved all of the alley adjacent to his property and has since occupied the same exclusively.

On January 5, 1954, when plaintiff took title to the premises claimed by him, his grantor and predecessor, William Spencer LaPlante, was in possession of the 65-foot tract north of the alley but was not in possession of the alley or the 5-foot tract to the south thereof claimed by defendant.

By agreement between plaintiff and the owners of the premises to the east of defendant's premises, it was agreed that plaintiff was not the owner of the south 5 feet of the east 20 feet of the west 65 feet of the north 150 feet of outlot 7.

Based upon the foregoing and under the provisions of M. S. A. 559.23,[1] the trial court determined that plaintiff is the owner of premises with a "practical boundary" as follows:

Commencing at the northwest corner of outlot 7 in Cummings Addition to Rochester; thence southerly along the west boundary thereof a distance of 136 feet; thence easterly at right angles a distance of 45 feet; thence southerly at right angles a distance of 9 feet; thence easterly at right angles a distance of 20 feet; thence northerly at right angles a distance of 145 feet to the north boundary of said outlot; thence easterly at right angles a distance of 65 feet to the place of beginning, together with the 23 foot tract immediately north of and adjacent thereto,

---

[1]M. S. A. 559.23 provides: "An action may be brought by any person owning land or any interest therein against the owner, or persons interested in adjoining land, to have the boundary lines established; * * *. The court shall determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines, and shall make such order respecting costs and disbursements as it shall deem just. * * *"

subject to public rights, "if any," for public alley purposes in the *westerly* 15 feet of outlot 7, and subject to the right of public thoroughfare over the easterly-westerly public alley above described; and that

Plaintiff has no right, title, or interest in the southerly 9 feet of the westerly 45 feet of such easterly-westerly public alley, or to the 5-foot tract immediately south thereof claimed by defendant.

Prior to the present proceedings the District Court of Olmsted County had determined that the easterly 15 feet of outlot 7 was not a public alley and that title thereto had passed under the same tax title proceedings under which plaintiff's predecessors acquired the westerly 15 feet of such outlot. In making this determination the trial court then relied upon Charter of City of Rochester, § 184, which provides:

"No street or alley which shall hereafter be dedicated to public use by the proprietor or proprietors of grounds within said city shall be recognized as a public street or alley unless the Common Council shall first approve of the plat thereof, or accept such dedication, or afterwards confirm the same by resolution."

At no time has the Rochester common council approved, accepted, or confirmed by resolution any plat or dedication of the tracts herein as public alleys. In a memorandum attached to the findings in the present proceedings, the trial court stated:

"The undersigned does not construe Section 184 * * * as prohibiting the City from acquiring a public thoroughfare by user. That section merely prevents individuals when platting land to force on to the City public thoroughfares which it does not want.

"A common law dedication may be inferred from the fact of common user by the public in improving and maintaining a highway, but expenditure of public funds for such purpose is not necessary. * * *

"There is no conflict between Section 184 * * * and the principle of common law dedication."

This appeal is from the judgment entered pursuant to the foregoing findings and conclusions. Plaintiff contends that the evidence is conclusive as to his ownership of the entire tract described in the complaint and that no part of it is subject to easements of any kind for alley

purposes. He contends further that no issue as to mistake requiring reformation of prior conveyances was raised by the pleadings and that no evidence was presented with reference thereto and accordingly that the trial court was without authority to reform any such prior instruments, or to establish practical boundaries pursuant to § 559.23.

The record discloses the following: In 1872, after Cummings Addition to Rochester was platted, the city vacated the southerly 23 feet of Fifth Street (later renamed Center Street) immediately north of and adjacent to outlot 7, thereby shifting the southerly boundary of such street 23 feet to the north. The resolution effecting this change was not recorded until 1916, and this omission undoubtedly led to errors in legal descriptions on subsequent conveyances of the tracts out of which the premises in controversy were taken.

On May 11, 1887, Daniel S. Hebbard, who was then the owner of outlot 7 and the vacated 23-foot tract north thereof, conveyed all of such premises, including the 23-foot tract, to Clarence A. Whited. On July 2, 1896, the administrator of Whited's estate conveyed outlot 7 to one David Elliott, the deed providing that "it being understood that the south line of 5th Street is the north line of said Lot" so as to include the 23-foot tract.

On September 13, 1898, David Elliott conveyed a tract in said outlot 7 to Frank L. Wilson, one of defendant's predecessors. Therein, he fixed the northerly boundary line thereof 168 feet south of and parallel to the north line of outlot 7 and extending westerly to the west line of such outlot 7. Thereafter, until 1916, all conveyances of tracts from which defendant's title arises described the northerly line thereof in the same manner. In 1916 by quitclaim deeds to one of defendant's predecessors from the owners of such tract, an attempt was made "to perfect title" conveyed to said real estate premises. These deeds described the same as commencing 168 feet south of the south line of *Fifth Street as now located;* thence west parallel with the south line of Fifth Street to the west line of outlot 7; thence south along such west line to the north line of Fourth Street; thence east along the north line of Fourth Street to the east line of such outlot; thence north along the east line to the place of beginning. Accordingly, these conveyances

placed the northern line of this tract 5 feet north of the southerly line of plaintiff's tract.

As to the alley, it appears that, when Elliott conveyed the tract of which plaintiff's premises are a part, he excluded therefrom the westerly 15 feet of outlot 7; the easterly 15 feet of outlot 7; and an easterly-westerly 18 foot tract immediately south of the north 150 feet of outlot 7, connecting the two 15-foot strips, but gave to his grantees the right to use these tracts for alley purposes. In a number of later deeds to plaintiff's predecessors this right to use such tracts for alley purposes was included. In 1915 plaintiff's predecessor, Elizabeth Campion, acquired the easterly 50 feet of the westerly 65 feet of the northerly 150 feet of outlot 7, but not the right to use the described alley. In 1938, by virtue of certain tax deeds, she acquired the westerly 15 feet of the northerly 150 feet of outlot 7 but not of the 23-foot tract north thereof. Shortly thereafter she erected a fence across the 15-foot tract on a line 127 feet south of the north line of outlot 7. Subsequently, this 15 feet was never used as a public thoroughfare. In 1951 she conveyed the west 65 feet of the north 150 feet of outlot 7; and the westerly 65 feet of the vacated 23-foot tract immediately north thereof (which had not been included in any of her deeds) to William Spencer LaPlante, who in turn conveyed the same premises to plaintiff in 1954.

As to the 18-foot easterly-westerly alley, all evidence indicates that as used its northerly line was 127 feet south of and parallel to the northerly line of outlot 7, and that its southerly line was 145 feet south of and parallel to such northerly line of outlot 7. Thus, the southerly 5 feet of the northerly 150 feet of outlot 7 was entirely south of this alley. There is evidence that this alley may have been blocked or fenced off at about the east boundary of defendant's premises since 1938. Defendant's access to it was over the driveway on the west line of his property or on the east line of the property to the east of his premises from Fourth Street. His use of it commenced in 1951. It was for private access to the rear of his property, and just to the north of his 45-foot tract.

■ Plaintiff contends that in an action to determine adverse claims the relief accorded defendants based upon reformation of recorded deeds of conveyance is unauthorized. When the pleadings and trial

procedure here are considered, however, it seems clear that the court had jurisdiction to determine the boundary lines separating the tracts involved, even though to accomplish this it was required to reform prior instruments of conveyance to conform to the intentions of the parties therein. In his answer defendant Binderim claimed title to premises overlapping the southern boundary line of the premises claimed by plaintiff, and also claimed that no part of the 18-foot easterly-westerly alley north thereof was vested in plaintiffs. Defendant Newhouse in his answer claimed title to premises immediately east of the Binderim premises which likewise overlapped the southern boundary of the premises claimed by plaintiffs. He alleged also that the east-west alleyway had been used for ingress to and egress from his premises for more than 15 years prior to the action and that the boundary lines between the various tracts were in dispute. Binderim and Newhouse both prayed for judgment barring plaintiffs from any interest in their premises as described. Newhouse prayed for judgment defining and locating the boundary lines between the properties. At the trial most of the evidence presented by plaintiff and defendants centered on issues relating to boundary lines.

We have held that, in actions to determine adverse claims, any interest in the land which is claimed adversely to the plaintiff may be determined. Engel v. Swenson, 191 Minn. 324, 254 N. W. 2; Telford v. McGillis, 130 Minn. 397, 153 N. W. 758; Scofield v. Quinn, 54 Minn. 9, 55 N. W. 745; Alt v. Graff, 65 Minn. 191, 68 N. W. 9. In Rouse v. Boye, 161 Minn. 431, 201 N. W. 919, we held that a prior judgment in an action to quiet title in which boundary lines were not determined was not res judicata as to such lines, implying that issues relative thereto might properly have been determined in the prior actions. Based upon such authority, we are satisfied that, under the pleadings and procedure here, the court did not err in determining issues relative to boundary lines.

■  Plaintiff asserts that, since the legal descriptions in the recorded conveyances in their chain of title are definite and unambiguous, the court was without authority to reform such instruments to conform to the intention of the parties therein or to receive evidence on this issue. But when the legal descriptions in these various conveyances are con-

sidered with reference to the 23-foot strip to the north of outlot 7, it seems clear that the court was correct in resorting to extrinsic evidence to determine the intent of the grantors in such conveyances as to the premises intended to be conveyed therein. It also seems clear from such evidence that these early grantors were all of the belief that the southerly line of Center Street, as newly platted, formed the northern boundary line of outlot 7. In Cannon v. Emmans, 44 Minn. 294, 298, 46 N. W. 356, 358, we stated:

"* * * for the purpose of discovering the intention of the grantor, the court may place itself in his place, and then consider how the terms of the instrument affect the subject-matter. * * *

"* * * when the intention is manifest, it will control in the construction of the deed, without regard to mere technical * * * rules of construction."

See, also, McRoberts v. McArthur, 62 Minn. 310, 64 N. W. 903; Stavanau v. Gray, 143 Minn. 1, 172 N. W. 885. In accordance with these decisions, we hold that, even though the legal descriptions here make reference to platted property, the measurements recited therein must yield to the clearly shown intentions of the parties at variance therewith. Turnbull v. Schroeder, 29 Minn. 49, 11 N. W. 147; Arms v. City of Owatonna, 117 Minn. 20, 134 N. W. 298; Hunt v. Keye, 150 Minn. 142, 184 N. W. 840; In re Robbins, 34 Minn. 99, 24 N. W. 356; Tucker v. Mortenson, 126 Minn. 214, 148 N. W. 60.

And when the intent of the parties is ascertained and found to be at variance with the legal descriptions in conveyances under consideration, the court may make findings based upon such intent without the necessity of an action for reformation. Thus, in First Nat. Bank v. Northwestern Trust Co. 181 Minn. 115, 231 N. W. 790, an action to determine adverse claims, defendant claimed that its mortgage constituted a first lien upon the premises claimed by plaintiff. There, this court approved the reception of parol evidence to establish that, notwithstanding the fact that the legal description of the premises covered by the mortgage included the disputed premises, the parties thereto did not intend that it cover such land. There this court stated (181 Minn. 124, 231 N. W. 793):

"* * * it is not necessary to ask for nor have a decree of reformation when, as here, plaintiff is in possession and has title in fee and it appears that the one who asserts a lien cannot in equity do so because the instrument under which the claim is asserted is subject to reformation * * *."

See, also, Leach v. Leach, 162 Minn. 159, 202 N. W. 448; School Dist. No. 73 v. Wrabeck, 31 Minn. 77, 16 N. W. 493; Scofield v. Quinn, 54 Minn. 9, 55 N. W. 745.

Here there is ample evidence to sustain the court's findings with respect to the boundary lines, and its determination that the grantors in the various instruments in the chains of title intended to convey the premises involved only within the limits thereof. There was substantial evidence that in such conveyances the grantors therein were under the mistaken impression that the south line of Center Street West, as then laid out, and after the southerly 23 feet thereof had been vacated, constituted the northerly line of outlot 7 of Cummings Addition; and to manifest their intent that the southerly boundary line of the tract from which plaintiffs' premises are derived was the northerly line of the easterly-westerly alley. Thus, in the deed to plaintiffs' predecessor, David Elliott, dated July 2, 1896, the north line of outlot 7 is defined as the south line of Fifth Street which was then 23 feet to the north of outlot 7. In a number of subsequent deeds the southern boundary of plaintiffs' tract is fixed at the northerly line of the east-west alley which, as indicated, is 127 feet rather than 150 feet south of the north line of outlot 7 as stated in such deeds. That plaintiffs' predecessors recognized the northerly line of this alley as their southern boundary line is further evidenced by the barn constructed and maintained on the northerly line of this alley since 1912. South of it neither plaintiffs nor their predecessors ever took possession or occupancy. Subsequent to 1898 this 18-foot strip south of the barn, in conjunction with the westerly 15 feet of outlot 7 on one side, and the easterly 15 feet thereof on the other, was used by the public for alley purposes until 1938 when plaintiffs' predecessor constructed the fence from the westerly edge of the barn to the westerly line of outlot 7.

Likewise, as to defendants and their predecessors, the evidence is

clear that at all times since 1898 they have occupied all of the premises south of the alley including the 5-foot strip above described.

■ We have frequently held that a practical location for a boundary line between properties may be established if the evidence supports a finding that there has been a boundary line between such properties, mutually acquiesced in by the owners thereof for a sufficient length of time to bar entry under the statute of limitations. Gifford v. Vore, 245 Minn. 432, 72 N. W. (2d) 625; Fishman v. Nielsen, 237 Minn. 1, 53 N. W. (2d) 553; Phillips Petroleum Co. v. Selnes, 223 Minn. 518, 27 N. W. (2d) 553; Dittrich v. Ubl, 216 Minn. 396, 13 N. W. (2d) 384; Dunkel v. Roth, 211 Minn. 194, 300 N. W. 610; Liederbach v. Pickett, 199 Minn. 554, 273 N. W. 77; Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740; M. S. A. 559.23. Here, the evidence establishes beyond any serious doubt that plaintiff and defendants and their respective predecessors mutually recognized and acquiesced in the practical boundary lines, which were determined by the court, for a period far beyond the required statutory 15 years.

■ The evidence is sufficient to establish a common-law dedication of the alley. The intent to dedicate it is manifested by conveyances made by David Elliott in 1898, at which time he owned all of outlot 7; and by various subsequent conveyances, all duly recorded, wherein the legal descriptions defined such alley and granted easements therein to the grantees in such conveyances. Therein the alley is described as already being in existence. There also was testimony that it had been used by the public continuously from 1913 to 1938 and that the city of Rochester had at times plowed and graveled it. There is no evidence that it had ever been vacated by the city.

The requisites of a common-law dedication are (1) an intent on the part of the owner to dedicate land to public use; (2) some action on his part to give effect to such intention; and (3) acceptance of such dedication by the public. 5 Dunnell, Dig. (3 ed.) § 2644, and cases cited. Here the first two requisites are manifested in the conveyances above described, while the third is evidenced by the subsequent conveyances referring to the alley as then existent; as well as by testimony of public user and public maintenance thereof until 1938. We have held that acceptance of a common-law dedication may be inferred from user

for such a period of time that public accommodation and private rights would be materially affected by an interruption thereof, even though the municipality does not act officially thereon, or from acts in improving or maintaining the dedicated grant. Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35; John A. Stees Co. v. Reinhardt, 142 Minn. 340, 172 N. W. 219; Menage v. City of Minneapolis, 104 Minn. 195, 116 N. W. 575; 5 Dunnell, Dig. (3 ed.) § 2647.

■ After such an alley has been thus dedicated and accepted, the municipality becomes trustee thereof for the purpose of its use. State, by Burnquist, v. Marcks, 228 Minn. 129, 36 N. W. (2d) 594. Public rights therein may not thereafter be divested without public consent or operation of law. Doyle v. Babcock, 182 Minn. 556, 235 N. W. 18; Keiter v. Berge, *supra.* By virtue of M. S. A. 541.01 such rights are not lost by adverse possession even beyond the statutory 15-year period. 1 Dunnell, Dig. (3 ed.) § 111. While it has been held that a municipality may be estopped from asserting rights in a public highway where, by affirmative actions, it has permitted others to assume that it had been abandoned for highway purposes so that they were authorized to construct buildings and structures thereon (State, by Burnquist, v. Marcks, *supra;* City of Rochester v. North Side Corp. 211 Minn. 276, 1 N. W. [2d] 361; Bice v. Town of Walcott, 64 Minn. 459, 67 N. W. 360), the present proceedings do not involve this issue. Here the city has not vacated the alley. Here the most that can be claimed to indicate the abandonment thereof is nonuser for a long period of time, and the erection of obstructions thereon by abutting landowners. These factors are insufficient to establish abandonment. Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. (2d) 588; St. Paul & Duluth R. Co. v. City of Duluth, 73 Minn. 270, 76 N. W. 35, 43 L. R. A. 433. Nor would conveyances from the state based upon tax titles to a portion of the premises subject to such alley terminate public rights therein. Such a conveyance would pass fee title only to the servient estate but would not eliminate either the dominant public or private easement therein. Alvin v. Johnson, 241 Minn. 257, 63 N. W. (2d) 22; Winston v. Johnson, 42 Minn. 398, 45 N. W. 958; 17A Am. Jur., Easements, § 169.

■ It is suggested that Charter of City of Rochester, § 184, which

provides that "No street or alley * * * shall be recognized * * * unless the Common Council shall first approve of the plat thereof, or accept such dedication, or afterwards confirm the same by resolution," would bar the common-law dedication here established. This ordinance was enacted September 22, 1904. The dedication was in 1898 and public user and acceptance followed immediately thereafter. While the ordinance might absolve the city from maintenance or repair of the alley, it would not prevent the common-law dedication thereof. This court has held that a statutory method of dedication does not eliminate common-law dedication not otherwise inconsistent therewith. Bosell v. Rannestad, 226 Minn. 413, 33 N. W. (2d) 40; Mueller v. Drobny, 225 Minn. 338, 31 N. W. (2d) 40. The same rule would seem applicable to ordinances such as the one above described.

Under the authorities cited the court's findings as to the public alley, as well as to the location of the boundary lines between the various tracts involved, must be affirmed.

Affirmed.