**BBCA, INC., Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. Civ. 6–85–273.**

United States District Court,
D. Minnesota,
Third Division.

March 25, 1986.

John R. Koch, Reichert, Wenner, Koch & Provinzino, P.A., St. Cloud, Minn., for plaintiff.

Beth A. Sabbath, Trial Atty., Tax Division, U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

DEVITT, Senior District Judge.

In this quiet title action the plaintiff questions the validity of a nominee lien filed against some of its property by the United States pursuant to I.R.C. § 6321. The government contends that taxpayer Gerald P. Jaeger fraudulently transferred the subject property, through an alter ego, to plaintiff, a Minnesota business trust, in order to avoid paying his income tax liability. Before the court is the government's motion for summary judgment.

Oral arguments were heard on the government's motion on February 24, 1986. Beth Ann Sabbath, Esq., trial attorney for the Tax Division of the United States Department of Justice, appeared for defendant. John R. Koch, Esq. appeared for plaintiff. Because plaintiff had submitted a late response to defendant's motion, defendant requested and was granted one week to file a reply memorandum. This memorandum, along with the parties' original memoranda and supporting documentation, is now before the court.

On March 8, 1983 taxpayer Gerald P. Jaeger transferred a parcel of real property to Sun Down Company, a Minnesota business trust. The transfer was accomplished by a quit claim deed which was recorded with the Stearns County, Minnesota recorder's office. According to the face of the deed, "the total consideration involved in [the] transaction [was] less than $1,000.00."

. Mr. Jaeger testified that he did not receive any consideration in exchange for the property. After the transfer he continued to maintain, repair and pay the utilities on the property. Although he and his parents continued to live on the property, none of them paid rent to Sun Down. *See* Transcript of Deposition of Gerald Jaeger, taken October 18, 1985, at 9–14. Mr. Jaeger was a trustee of Sun Down Company.

On September 15, 1983 the same property was transferred by taxpayer Jaeger, acting in his capacity as trustee of Sun Down Company, to plaintiff BBCA, Inc.[1] Again, the recorded deed indicates that less than $1,000.00 in consideration was exchanged, despite the property having an assessed value of $111,600.00. Even after this second transfer, the Jaeger family continued to live on the property without paying rent to Sun Down or BBCA, Inc. *See* Transcript of Deposition of Gerald Jaeger, taken October 18, 1985, at 13–15.

It is the government's theory, and the basis of its summary judgment motion, that these transfers were fraudulent, in that they were made by Jaeger in order to avoid paying income taxes, and should be set aside as a matter of law. *See* Minn. Stat. §§ 513.20–.32 (1984) (Minnesota's uniform fraudulent conveyance act). At the time of the transfers, Mr. Jaeger had outstanding income tax liabilities for the years 1978 through 1981.

In order to grant defendant's motion for summary judgment the court must find 1) that at the time of the transfer of the property to BBCA, Inc., Sun Down Company was taxpayer Jaeger's alter ego; and 2) that the transfer of the subject property

---

**1.** The deed which transferred the property from Sun Down Company to BBCA, Inc. retained a life estate in taxpayer Jaeger's parents, John J. and Gertrude Jaeger.

was fraudulent within the meaning of Minn.Stat. § 513.23 (1984). The court makes these findings and grants defendant's motion for summary judgment.

1. The transfer of the subject property was accomplished through a two-step procedure. First, taxpayer Jaeger transferred the property to Sun Down Company. Second, Sun Down Company in turn transferred the property to BBCA, Inc. If Sun Down Company was the alter ego of Jaeger, its participation in the transfers may be disregarded and the transfer may be viewed as being direct from Jaeger to BBCA, Inc. *Loving Saviour Church v. United States,* 556 F.Supp. 688, 693 (D.S.D. 1983), *aff'd* 728 F.2d 1085 (8th Cir.1984).

The Minnesota courts apply a two step analysis in determining whether an organization is the alter ego of an individual.

The first prong of the test focuses on the shareholder's relationship to the corporation. Eight factors we [note] as significant in this determination include:

> [I]nsufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely a facade for individual dealings.

[Cit. omit.]

The second prong of the test examines the relationship of the plaintiff to the corporation. It requires the showing of "an element of injustice or fundamental unfairness." [Cit. omit.] To satisfy this portion of the test, "proof of strict common law fraud is not required, but, rather, evidence that the corporate entity has been operated as a constructive fraud or in an unjust manner must be presented."

*White v. Jorgenson,* 322 N.W.2d 607, 608 (Minn.1982).

The court finds that these two prongs have been satisfied. Mr. Jaeger testified that the transfer to Sun Down was for no consideration and left him insolvent. It is undisputed that Jaeger continued to pay bills relating to the property after the transfer; that Jaeger continued to manage, repair, live on and homestead the property following the transfer; that Jaeger and his parents continued to live on the property rent free after the transfer; and that Jaeger was a trustee of Sun Down Company. Considering these facts together, the conclusion is inescapable that nothing changed as a result of the transfer and that Sun Down Company was merely an alter ego for taxpayer Jaeger. Accordingly, the court disregards Sun Down Company and treats the transfer as being directly from Jaeger to BBCA, Inc.

2. Under Minn.Stat. § 513.23 (1984) a transfer is fraudulent if the transferor is "thereby rendered insolvent ... without regard to his actual intent if the conveyance is made without a fair consideration."

As noted, plaintiff does not dispute that taxpayer Jaeger was rendered insolvent by the transfer of his property, through Sun Down, to plaintiff. The first statutory requirement satisfied, the question becomes whether the transfer was "made without a fair consideration." Plaintiff contends that this question raises a fact issue. On the record before it, the court cannot agree.

Plaintiff introduces receipts for cash payments it allegedly made to Jaeger or Sun Down Company. The receipts total $49,600 and span a two year period from March, 1982 to June, 1984. At the time of the transfer, the property had a tax valuation of $111,600. The property was transferred from Jaeger to BBCA during the period from March to September of 1983. The plaintiff claims that these unsubstantiated payments related to the transfer of the property, and that they constituted a fair constitution.

Plaintiff's attorney argues that the payments might have been "made in conjunction with an outright sale of the property or as loans to Jaeger secured by an equitable mortgage in the form of a deed absolute." In an affidavit filed by the

president of BBCA, Inc., Joan Noske testifies that the payments were made "as consideration or security for" the transfer. The seemingly low amount of the payments is explained by the depressed values of agricultural property and the fact that the property was subject to a life estate.

Plaintiff's argument is unpersuasive and in any case fails to raise a genuine issue of material fact. The deeds transferring the property are clear and unambiguous on their face. They are quit claim deeds by which plaintiff BBCA, Inc. obtained all rights in and title to the property, subject only to a life estate, for less than $1,000 in consideration. There is no mortgage referred to or filed. Further, there is undisputed evidence that BBCA, Inc. treated the transfer as an outright transfer when it later mortgaged the property for $70,000, an amount which, incidentally, greatly exceeds what it now argues is its fair market value. Finally, the dates of the purported payments bear no relation to the transfer of the property.

Given the clarity of the deeds, the court need not speculate about plaintiff's hypothetical explanations for the alleged payments.

> [In construing a deed,] the cardinal rule is to ascertain and give effect to the intention of the parties. *In case of doubt,* courts should consider the facts and circumstances attending the execution of a deed, the practical construction of it by the parties and their grantees and the preliminary negotiations.

*Dittrich v. Ubl,* 216 Minn. 396, 406, 13 N.W.2d 384, 390 (1944) (emphasis added). *See also Neill v. Hake,* 254 Minn. 110, 93 N.W.2d 821 (1958). Further, "when the intention [of the parties] is manifest, it will control in the construction of the deed." *Id.* at 118, 93 N.W.2d at 827.

Looking at the deeds, the intentions of the parties is manifest. Under the facts and documents before the court, plaintiff fails to raise a genuine issue of material fact. *Cf. Greer v. Greer,* 350 N.W.2d 439 (Minn.App.1984) (summary judgment affirmed despite appellants' assertion of a

"fair consideration" issue under Minn.Stat. § 513.23 (1982)). Accordingly, the court finds as a matter of law that the transfer was made for less than a fair consideration.

The conveyance in this case was made by taxpayer Jaeger through his alter ego, Sun Down Company. The transfer was fraudulent under Minn.Stat. § 513.23 (1984). The conveyance is therefore set aside and defendant is entitled to judgment as a matter of law.

Based upon the foregoing, the arguments and briefs of counsel, and all of the files, records and proceedings herein,

IT IS ORDERED:

Defendant's motion for summary judgment is GRANTED.